# McClure *versus* Commonwealth.

Under the 19th section of the Act of 31st of March 1860, in an indictment for forgery under the 169th section of the same act, it is not necessary to prove an intent to defraud any particular person, but it is sufficient to prove a general intent to defraud.

February 27th 1878. Before AGNEW, C. J., SHARSWOOD, MERCUR, GORDON, PAXSON and TRUNKEY, JJ. WOODWARD, J., absent.

Error to the Court of Quarter Sessions of *Philadelphia county :* Of January Term 1878, No. 28.

Indictment of Robert McClure for fraudulently signing and uttering a diploma purporting to be issued by the Veterinary College of Philadelphia. The first count of the indictment charged that the defendant "unlawfully and fraudulently did make and sign, and was concerned in making and signing" said diploma; and the second that he "unlawfully and fraudulently did utter as true" said instrument. The indictment was found under the 169th sect. of the Act of March 31st 1860, Purd. Dig. 364, pl. 253. At the trial it appeared that the "Veterinary College" had been incorporated by Act of Assembly, but had not been in existence for

5 NORRIS—23

[McClure *v.* Commonwealth.]

some years. It having come to the knowledge of the police authorities, however, that a number of diplomas, purporting to be of said college, were in the hands of improper parties, who were plying the vocation of veterinary surgeon, they were traced to the defendant, who had been one of the faculty of the college when in existence. A detective was directed by the police authorities to procure the proper evidence to convict McClure of the offence of making and uttering these diplomas, and a young man named Standin, who had been a student at the college, was employed to negotiate with defendant and procure a diploma. Following the directions given him, he finally, after some correspondence, concluded an arrangement whereby he was to receive a diploma for $120. The money to be paid therefor was marked, and when the diploma was delivered to Standin, a dectective arrested McClure. When McClure handed the diploma to Standin, he gave him three books, saying to Standin, "These will help you in your practice. You are now a full-fledged doctor, and are as much entitled to write M. D. after your name as any doctor in the land." There was no communication or understanding between McClure and Standin that the college was not in existence, or that the names signed to the diploma were not written by the parties whose names were thereto signed, or that the diploma was not a genuine one.

The diploma, which was in evidence, read as follows:—

*Ars Veterinaria post Medicinam Secunda est.*

VETERINARY COLLEGE OF PHILADELPHIA.

To all whom it may concern.

Know ye, That we, the Officers and Professors of the
VETERINARY COLLEGE OF PHILADELPHIA,

Do, by the authority vested in us by the Sovereign Power of the State of Pennsylvania, confer the degree of Doctor of Veterinary Medicine and Surgery, with all the attending immunities consequent thereto, upon Francis Standin, he having attended the curriculum of Studies, and complied with all the requirements imposed by the laws of our Institution. And we hereby certify his entire ability to treat, in a scientific manner, all kinds of Diseases peculiar to Veterinary Practice.

In testimony whereof, we have granted him this Diploma, on this first day of March, Anno Domini 1877, in the Hall of our College, at Philadelphia, affixing our signatures and the Seal of the College thereto.

ALFRED S. ELWIN, M. D., *Pres't.*      ROBT. MCCLURE, M. D. V. S.
GEO. W. ORLESS, V. S. *Secretary.*      JOHN H. GOULD, V. S.

[SEAL.]

Both Dr. Elwyn and Mr. Gould, who had in no manner been connected with the college for many years, testified that the signatures purporting to be theirs were forgeries, and another witness,

[McClure *v.* Commonwealth.]

Warren, a professor of penmanship, testified that they were written to the diploma by him at the request of McClure, who had given him genuine signatures, upon which he was to practise so as to consummate the forgery.

The points of defendant, with the answers of the court thereto, were as follows :—

1. That in order to convict the defendant, the Commonwealth must prove, beyond a reasonable doubt, that there was an intent to defraud; and there has been no evidence whatever of an intent to defraud.

Ans. " I will affirm the first ; and as to the latter, it is the jury's right to determine if there was an intent to defraud any one."

2. There is no evidence before the jury to convict the defendant under the bill of indictment before them.

" Refused."

In their general charge the court said : " If you find that the defendant intended to defraud any one when he procured the names to be signed to the diploma, he is guilty."

The defendant having been found guilty, took this writ, and assigned for error the admission in evidence of the diploma, the answers to his points, and the foregoing portion of the charge.

*George Haldorn, F. F. Brightly* and *William B. Mann*, for plaintiff in error.—The 169th section of the Act of 31st of March 1860, is derived from the English statute, 14 Vict., c. 100, in the construction of which it was held that it is sufficient, in an indictment for forgery, to allege that the act was done with an intent to defraud, without alleging an intent to defraud any particular person ; yet it is still essential to a conviction, that such an intent should be proven: Regina *v.* Hodgson, Dearsley & Bell's Crown Cases 3 ; Regina *v.* Mills, Id. 205.

*William W. Kerr*, Assistant District Attorney, and *Henry S. Hagert*, District Attorney, for the Commonwealth.

Chief Justice AGNEW delivered the opinion of the court, March 11th 1878.

Foreign cases cannot override the express words of a Pennsylvania statute. The 19th sect. of the Criminal Procedure Act of March 31st 1860, 1 Brightly Dig. 379-80, pl. 20, is in these words :—

"It shall be sufficient, in any indictment for forging, uttering, offering, disposing of, or putting off, any instrument whatsoever, or for obtaining or attempting to obtain any property, by false pretenses, to allege that the defendant did the act with intent to defraud ; without alleging the intent of the defendant to be to defraud any particular person ; and on the trial of any of the

[McClure *v.* Commonwealth.]

offences in this section mentioned, it shall not be necessary to prove any intent on the part of the defendant to defraud any particular person, but it shall be sufficient to prove that the defendant did the act charged with an intent to defraud."

Here is a positive statute which says you need not charge or prove an intent to defraud any particular person, but it shall be sufficient to charge and prove a general intent to defraud. Did the legislature mean what it said in this act? Who can doubt it? What was the purpose? Clearly to meet those frauds which affect the public at large. If a man forge bank notes, bonds to bearer, or other documents, intended to deceive the public, and make money out of the imposture, on what principle is this a less offence than if he intended to cheat a single individual? He often does not circulate them himself, but sells them, at a percentage on their face, to accomplices, who circulate them to the injury of the public. Such a counterfeiter is far more dangerous to society than the "shover," as he is called, of the bills or counterfeit papers. Now that any foreign case should control a Pennsylvania statute, so plain in its intent and beneficial in its purposes, would itself be almost a fraud upon the public. We cannot recognise any such authority.

The case before us is a clear one. The defendant procured a certain diploma to be fraudulently and falsely signed with the names of certain persons as the officers of a once existing institution authorized to grant degrees. He sold this diploma to a person named Standin for $120, after a correspondence on the subject, resulting in the price named. Standin, it is true, was engaged to trap the defendant and he was not deceived. But not so the defendant; he sold the forged diploma in order to make money out of it, and thereby intending to defraud any and every one putting trust in it, as the evidence of the skill and knowledge of the person named in the diploma. He fell directly within the words and intent of the 19th sect. referred to; he had a fraudulent intent in his act; his purpose was corrupt and injurious; and this the law says shall be sufficient; and it shall not be necessary to prove any intent to defraud any particular person. No one can doubt the fraud such a document is intended to perpetrate, or the intent to defraud, that the forger had, when he got it up and used it. It is just such a case as the law intends to reach, a general intent quite as injurious to the public as an intent to defraud a particular person.

> Sentence affirmed, and the record is ordered to be remitted to the Court of Quarter Sessions, for the purpose of proceeding to bring the defendant into court and committing him to custody, in order that the sentence of the court shall be fully carried into effect.