Snyder *v.* Reading School District, Appellant.

Argued January 23, 1933. Before Frazer, C. J., Kephart, Schaffer, Maxey, Drew and Linn, JJ.

328

*Walter Biddle Saul,* of *Saul, Ewing, Remick & Saul* and *George Eves,* for appellant.—The decision of the architect that certain violations of the terms of the con-tract, admittedly committed by the plaintiff in the per-

formance of the work, constituted sufficient cause for the termination of the plaintiff's employment by the defendant justified the defendant in terminating the plaintiff's employment: Payne v. Roberts, 214 Pa. 568; Hartepuee v. Pittsburgh, 97 Pa. 107; Thaler v. Construction Co., 229 Pa. 512.

Plaintiff cannot recover unless he shows that he arbitrated or was refused arbitration.

*John B. Stevens,* of *Stevens & Lee,* with him *Charles H. Weidner,* for appellee.

OPINION BY MR. JUSTICE SCHAFFER, April 24, 1933:

Plaintiff entered into a contract with defendant school district to construct a schoolhouse. After partly proceeding with the work, he alleges he was unwarrantably discharged from the job and his contract was cancelled. He brought this action to recover damages for injuries to his credit and reputation, for loss of profits which he would have made, and for the cost of labor and materials which he had furnished. The jury found a verdict in his favor for $44,775.60, representing only the cost of the labor and materials contributed by him to the undertaking, and interest thereon. The court reduced the award to $40,100.53, the amount of the reduction covering the cost of removing certain defective work. From the judgment entered for the reduced amount the school district appeals.

The main dispute turns upon the construction of the contract; whether the certificate of the architect is conclusive upon the question of substantial violation of the provisions of the contract by the plaintiff and warranted defendant in terminating his employment, or whether the reasonableness of the architect's determination that defaults existed may be inquired into by a jury and whether they may determine the correctness of his conclusion.

The pertinent provisions of the contract appear in the Reporter's notes.

The theory of plaintiff's case was that the defendant had unjustifiably terminated his employment when the contract was partly performed when he was not intentionally at fault and when he was endeavoring to comply with the terms of his contract and to remedy correctable mistakes.

It is argued by appellant that because plaintiff admits that he had not complied with the terms of the specifications in certain respects—in one instance, in not putting footings under a wall, and in another, by omitting "integral waterproofing" from a second wall—that these omissions, and his failure to employ a competent superintendent, justified the architect's certificate of dismissal and the school board's action of discharge from the job.

So far as the absence of footing is concerned, plaintiff testified that this was a mistake which he was in the act of correcting when he was discharged. As to the absence of waterproofing, he averred, and the correspondence bears out his testimony, that he had offered to arbitrate this matter in accordance with the terms of the contract and the defendant had acquiesced in an arbitration before he was discharged. As to the superintendent, plaintiff testified that the man he had employed was a proper person and was so recognized by the architect, but his discharge was demanded by a member of the school board.

Appellant contends that article XXII of the contract is controlling so far as the powers to be exercised by the architect are concerned; that the architect is the final judge of whether substantial violations of any provision of the contract have occurred; that he is not only the final judge of such alleged violations, but is also the judge of whether, if such violations exist, they constitute sufficient cause to justify the termination of the contractor's employment. This contention involves too close

a reading of section 22 and disregards the contract as a whole. To reach a proper interpretation, the whole contract must be considered: Vulcanite Paving Co. v. Phila., 239 Pa. 524; Moran v. Bair, 304 Pa. 471.

A construction of article XXII of the contract which would give to the architect the right to say conclusively whether or not one of the conditions set forth therein does or does not exist must be rejected if upon examination of other provisions of the contract it appears that such right or power is limited. Article XXXIX provides that the architect's decisions, in matters relating to artistic effect, shall be final (which to a degree at least negatives the idea that it was to be so on other matters), and that "except as above or otherwise expressly provided in the contract documents, all of the architect's decisions are subject to arbitration." Article XXXVIII provides that the "architect is *in the first instance* the judge of the performance of the contract." This provision would be unnecessary if the architect's decisions under article XXII are to be final. It would seem that those instances where the architect's decisions are to be final are found in article XIV, which provides that the superintendent shall be satisfactory to the architect, and in the general provisions of the contract, where it is provided that the architect's decision as to the true construction and meaning of the drawings and specifications shall be final. Our view of the contract is that the parties intended that the conditions recited in article XXII prior to the mention of the architect's certificate should exist and be proved as a fact. In view of the conflict in the testimony as to this the question was for the jury. The receipt by the owner of the architect's certificate is no protection to him, if in fact there had been no substantial violation by the contractor. Some of the conditions mentioned in article XXII are obviously not a matter of judgment of the architect, such as the bankruptcy of the contractor, or the appointment of a receiver on account of insolvency. Had the intent of the

parties been to give to the certificate of the architect the effect of discharging the contractor, under any circumstance and for any cause, the parties could have clearly so stipulated. This, however, they did not do. Discharging a contractor after he has expended money for materials and labor, and partly proceeded with the work, is a very drastic act and can be sustained only in cases where the power to do so is clear and the performance by the contractor plainly not in accordance with his undertaking.

We are here considering a contract which speaks of a "substantial violation of any provision." By these words it would seem to us the parties had in mind a wilful and intentional noncompliance with the plans or specifications and such a course of conduct does not appear. As to the waterproofing, the plaintiff could not be said to be in default so long as he acted honestly and was led to believe by the defendant's acquiescence in his request for arbitration that the correcting of this alleged defect could be held in abeyance until the arbitrators had passed on it. The architect himself testified the waterproofing could have been satisfactorily done in a different manner from that provided by the specifications, but that the school board decided against him as to this. Under these circumstances, it would seem to have been a fair matter for arbitration. Evidently the school board so concluded, because they agreed to the arbitration and designated the President of the Bar Association to name the arbitrator. They could not lull the contractor into a sense of security by leading him to believe they were willing to arbitrate and then change position, contend that the contractor had violated the provision of the contract requiring waterproofing, and terminate the contract with him on this ground. Having agreed to arbitrate, they could not insist upon the forfeiture.

It cannot be said that a mere mistake in leaving out the footings under one of the walls constituted a substantial violation of the contract, where it was shown

that upon discovery of the mistake the contractor was proceeding to correct it by tearing down the portion already erected, intending to rebuild it as the contract required. So far as the failure to employ a competent foreman is concerned, the time fixed by the notice to plaintiff to do so had not expired when the architect directed plaintiff to stop work. The notice to plaintiff to replace the foreman within three days was given on April 10, 1929, and the notice to stop all work the next day, April 11th. Plaintiff alleged that he had discharged the superintendent upon receipt of the notice, but had not succeeded in obtaining another man to take his place.

As succinctly stated by the court below in its opinion, "One cannot overlook that the parties had taken steps to arbitrate the waterproofing; that the contractor testified he had begun to correct the footings; that there was testimony that he did remove the objectionable superintendent, and was admittedly stopped from working before the allowed period for replacing him had expired."

Payne v. Roberts, 214 Pa. 568, which appellant contends rules the instant case, differs from it, because in that case the contract provided that the work was to be done to the satisfaction of the architect. There is no such provision in the contract here involved. Moreover, in that case the architect's decisions were by the contract made "binding upon the parties," which is not the situation here.

All that the plaintiff recovered was the value of what he had put into the building in the way of material and labor, plus overhead expenses. Such a recovery is warranted under the rule laid down in Dravo Contracting Co. v. Rees & Sons Co., 291 Pa. 387, 392. "Plaintiff was entitled to recover for overhead charges in addition to the labor actually performed in connection with the work done under the contract": Lytle, Campbell & Co. v. Somers, 276 Pa. 409.

Appellant argues that plaintiff's recovery should be limited to the difference between the cost to the defend-

ant to complete the contract and the contract price. If the defendant was justified in terminating the contract, the amount of plaintiff's recovery is limited by article XXII to the difference between the cost of completion and the contract price, provided the cost of completion was less than the contract price. This measure of recovery, however, would not apply if the termination of the contract was unjustified.

As to the position assumed by defendant that the plaintiff cannot recover unless he shows that he arbitrated or that it refused arbitration, it is sufficient to say that, in view of defendant's action in terminating the contract without sufficient cause, it cannot insist upon this position.

The argument of defendant that it is entitled to a new trial because the verdict was not in accordance with the evidence, does not appeal to us, as we think the evidence was sufficient to warrant the jury in finding the amount of plaintiff's expenditures. As to the second reason for a new trial, that the charge of the court was vague, contradictory and confusing, our reading of it does not impress us that these criticisms are justified.

Objection is made by the defendant to the action of the court in reducing the verdict, it being contended that the court reduced it by considering testimony which had been stricken out. This testimony was that of the plaintiff showing the cost of removing the walls which had been constructed. It is obvious that the defendant is entitled to be credited with this amount and it is not pointed out that the figures used by the court in making the reduction were inaccurate. The record leaves doubt in our minds whether the court did intend to strike out this testimony, but whether it did or did not, on a reconsideration of the case to reach a just result it could avail itself of these figures, particularly where their correctness was not challenged.

Our review of the record satisfies us that the case was properly submitted to the jury.

The judgment is affirmed.