## Com. of Pa. *v.* Powers, Appellant.

Argued July 12, 1933.

Before TREXLER, P. J., KELLER, CUNNINGHAM, BALDRIGE, STADTFELD, PARKER and JAMES, JJ.

*John E. McDonough,* and with him *R. Paul Lessy,* for appellant.—A petition to challenge the registration of a voter is not a written instrument within the meaning of Section 169 of the Act of March 31, 1860, P. L. 382. People v. Frazier, 137 Pac. 276; State v. Redstake, 39 N. J. L. 365.

*C. William Kraft, Jr.,* Assistant District Attorney, and with him *William J. MacCarter, Jr.,* District Attorney, for appellee.

OPINION BY JAMES, J., October 2, 1933:

This appeal raises the questions whether the petitions to strike off the names from the voters' registry list were (1) written instruments, (2) to the prejudice of another's rights, and (3) with intent to defraud, within the meaning of Section 169 of the Act of March 31, 1860, P. L. 382, 18 PS 591.

Defendant was convicted upon indictments charging him with (a) Forging written instruments in violation

of Section 169 of the Act of 1860, P. L. 382; (b) uttering and publishing forged instruments in violation of the same section; and (c) causing or procuring the county commissioners to alter or falsify a docket or book belonging to the public office of the county commissioners of the County of Delaware, Pennsylvania. The indictments under (a) and (b) contain counts charging that the forgery of the instruments and the uttering or publishing of the forged instruments were (1) to the prejudice of each of the persons whose names were sought to be stricken from the register; (2) to the prejudice of Damis, one of the purported signers (3) to the prejudice of Coiro, the purported signer of the other petitions; and (4) to the prejudice of the county commissioners.

The Commonwealth's evidence established and the jury's verdict determined that on or about October 18, 1932, the defendant filed, inter alia, with the chief clerk of the county commissioners, some sixty-one petitions, addressed to the county commissioners of Delaware County requesting them to strike from the registry list of voters of the third precinct of the seventh ward of the City of Chester, the names of voters named in the respective petitions.

The first nine of these instruments purported to be signed by one G. Coiro, were typical in their phraseology and a typical copy of the body of one reads as follows: "To the County Commissioners: The petition of G. Coiro respectfully represents: 1. That he is a duly qualified voter of said precinct. 2. That Ferdinand Dizro was registered as a voter in said precinct on the 8th day of October, A. D. 1932. 3. That Ferdinand Dizro was not a resident of said precinct on October 8, 1932. 4. The Commissioners are respectfully requested to strike said name off the registry list of said precinct. Respectfully, G. Coiro." Exhibits from 10 to 61 inclusive, purported to be signed by

322

F. Damis, were also precisely in the same terms differing only as to name of the voter, and the third paragraph which averred: "3. That said James Powell did not pay prior thereto within two years, a State or County tax assessed two months and paid one month before Election of November 8, 1932 or before said Registration Day."

The two persons whose signatures were purported to be signed to the petitions were illiterate persons who neither signed the petitions, nor authorized or directed any one to sign them on their behalf. The persons whose names were sought to be stricken from the registry list were duly registered in accordance with the provisions of the relevant Acts of Assembly. Some of the persons named in the petitions were produced and established that at the time of their respective registrations and at the time of the presentation by the defendant of the petitions, they possessed all of the qualifications requisite under the Constitution of the United States and of the Commonwealth of Pennsylvania to entitle them to vote.

The petitions which are the gist of the present controversy were authorized by the Act of March 5, 1906, P. L. 63, Sec. 1, (25 PS 135) which provides for the personal registration of electors in cities of the third class, and makes such registration a condition precedent to the right to vote in such cities. Section 11 of the Act prescribes the petition as the method of objection by any citizen to the action of the registrars in accepting any claim for registration by providing that an objecting citizen may file his objection with the county commissioners setting forth the cause of his complaint within ten days. The same section further provides that when such petitions are filed, the county commissioners shall fix a time and place for hearing and, after due notice, hold a public hearing, at which

time the register of voters may be amended by cancellation of names already on the register.

The 169th section of the Act of 1860, supra, is as follows: "If any person shall fraudulently make, sign, alter, utter or publish or be concerned in the fraudulently making, signing, altering, or publishing any written instrument, other than notes, bills, checks or drafts already mentioned, to the prejudice of another's right with intent to defraud any person or body corporate, or shall fraudulently cause or procure the same to be done, he shall be guilty of a misdemeanor."

"A definition very generally accepted describes forgery as the false making or material alteration, with intent to defraud, of any writing which, if genuine, might apparently be of legal efficacy or the foundation of a legal liability. Other definitions may be found but they do not add materially to this general description of the offense which, obviously, is merely a statement of the essential elements of the crime, viz., a false making of some instrument in writing, a fraudulent intent, an instrument apparently capable of effecting a fraud." 12 R. C. L. 139, and cases therein noted.

The essential elements of the offense are, (1) the false making of some instrument in writing, (2) the instrument must be apparently capable of effecting a fraud and working an injury to another, and (3) there must be a fraudulent intent.

The first contention of the appellant is that the Act of 1860, supra, does not apply for the reason that the personal registration act in third class cities was not adopted until March 5, 1906. To this we can not agree for, even assuming that the personal registration of voters in third class cities was not required until the Act of 1906, still there was a registry of voters which in some measure at least had been a part of the laws of the Commonwealth for many years. At the time

of the passage of the Act of 1860, the registry of voters by assessors was provided by the Act of July 2, 1839, P. L. 519, Sec. 2, (25 PS 13). At the time of the passage of the Act of 1860 any citizen, if he possessed, the constitutional qualifications of a voter, was entitled to be registered as a voter, just as in 1932 a citizen was entitled to be registered as a voter if he possessed the constitutional qualifications, the difference being solely the method of placing his name on the registry list. If the argument of the appellant is carried to its logical conclusion, a forgery of the registry list itself would not be within the meaning of the Act of 1860 because there was no such personal registration list at the time of the passage of the Act.

Appellant's contention can not be more clearly answered than in the language of Judge Orlady in Com. v. Wilson, 44 Pa. Superior Ct. 183, where on an appeal from an indictment charging the forgery of a railroad ticket under Section 169 of the Act of March 31, 1860 the court said (p. 186): "The crime of forgery, at the present time, extends to a large number of subjects which were not in existence in the earlier periods of the criminal law, and some of them, in fact, have had their origin in the last half century. A railroad ticket such as is now in daily use was not in existence when the penal code was enacted; but the writing in this case,—the ticket,—is covered by all definitions and descriptions of the crime of forgery. Our code was not intended, because it could not possibly do so, to embrace all of the appliances, devices and methods of transacting our affairs; and as stated by the commissioners, 'The common law definitions of crimes are so clear, perspicuous and precise; the modes of proof, rules of evidence, and manner of procedure in criminal investigation are so well settled and known, that it is doubtful if they could be improved upon by a more skillful codification.' The common law, as modified by

our code, embraces the written instrument described in this indictment."

The second proposition raised by the appellant is that the petitions were not instruments within the meaning of Section 169. "The generic character of the writing or instrument was formerly of much greater importance than now; for by statute, and to a considerable extent by judicial construction, the crime of forgery has been extended and covers nearly every class of instruments known to the law as affecting private or public rights ...... Generally, however, the substance of the instrument as distinguished from its form is determinative of whether it may support a charge of forgery, and the question most often arising on the character of the instrument relates not so much to the matter of generic classification as to the more specific inquiry whether the instrument imports or embodies some one or more of the other elements of the crimes, especially falsity and, on the assumption of genuineness, efficacy to affect the rights of others." 12 R. C. L. 141.

An examination of the authorities in Pennsylvania fails to disclose that this particular question has ever been ruled upon but many cases which embrace writings of a varied character have been sustained by our courts as being within Section 169, all of them holding that the fraudulent making of any writing, if it be to the prejudice of the right of another, is clearly within the purview of the section.

A railroad ticket is a written instrument under Section 169 of the Criminal Code, Com. v. Wilson, supra; a duplicate state tax receipt, Com. v. Leib, 76 Pa. Superior Ct. 413; a receipt for taxes, Com. v. Phipps, 16 Phila. Rep. 457; a diploma from college, McClure v. Com., 86 Pa. 353; receipts for pilot fees, Com. v. Fitzpatrick, 3 D. R. 305; a marriage certificate, Com. v. Compton, 7 Lacka. Leg. News 108; a naturalization

certificate, U. S. v. Randolph, 1 Pitts. 24; a miner's certificate, Com. v. Wyoda, 44 Pa. Superior Ct. 552.

We have examined many cases from other jurisdictions dealing with this question but find no case in point which holds an opposite conclusion. However, we believe the authorities from our own courts are sufficient authority for our position that the petitions were written instruments within the meaning of Section 169.

Appellant further earnestly urges that the prejudice which one must suffer as the result of a forgery must affect some pecuniary or property right. There is nothing in the Act of Assembly which restricts the rights affected to pecuniary or property rights but the language is broad and comprehensive enough to include any and all rights. The language of the Act is "to the prejudice of another's right." The word "prejudice" means to the injury or detriment of another. It may be that the right to vote is neither a pecuniary or property right but still to him who possesses it, it is the most sacred and valuable right which the citizens of our country possess. We could elaborate at length upon the price which mankind has paid in blood and suffering for the right of suffrage, but we shall not do so, because we are of the opinion that it is idle to say that to deprive a man of his right to vote is not commiting an act to the prejudice of another's right.

Further discussion of other rights of the registered voters and the rights of the two alleged petitioners whose names were forged that may have been affected by the forged petitions we believe to be unnecessary.

The verdict of the jury established that the act or acts of the defendant were done with a fraudulent intent; that he forged the instruments in an effort to deprive registered voters of their right to vote. We have no hesitancy in holding that the petitions were

written instruments and were forged to the prejudice of another's right, with intent to defraud.

The assignments of error are overruled and the judgment is affirmed. It is ordered that the defendant appellant appear in the court below at such time as he may be there called and that he be by that court committed until he has complied with the sentence or any part thereof which he had not performed at the time this appeal was made a supersedeas.