Commonwealth *v.* Snyder et al., Appellants.

524

Argued March 9, 1936.

Before KELLER, P. J., CUNNINGHAM, BALDRIGE, PARKER, JAMES and RHODES, JJ.

J. A. *Welsh,* with him *Miller Alanson Johnson* and
*M. Bernard Hoffman,* for appellant.

*Harry S. Knight,* of *Knight & Kivko,* with him *Edgar
S. Richardson,* and *John A. Rieser,* District Attorney,
for appellee.

OPINION BY RHODES, J., September 30, 1936:

The defendants, John C. Snyder and Charles R. Bur-
key, were indicted, tried, and convicted of fraudulently
making and signing, and being concerned in fraudu-
lently making and signing, a written instrument, and
of fraudulently uttering and publishing the same. The
indictment was drawn under section 169 of the Act of
March 31, 1860, P. L. 382 (18 PS §3631), which pro-
vides: "If any person shall fraudulently make, sign,
alter, utter or publish, or be concerned in the fraudu-
lently making, signing, altering, uttering or publishing
any written instrument, other than notes, bills, checks
or drafts already mentioned, to the prejudice of an-
other's right, with intent to defraud any person or body
corporate, or shall fraudulently cause or procure the
same to be done, he shall be guilty of a misdemeanor,
and, on conviction, be sentenced to pay a fine not ex-
ceeding one thousand dollars, and to undergo an im-
prisonment, by separate or solitary confinement at la-
bor, not exceeding ten years."

Defendants' motion for new trial was refused by the court below, and sentences were imposed. Defendants appealed.

The appellants have presented their argument on this appeal in eight parts with the corresponding assignments of error applicable to each part of the argument. We shall consider the questions raised in the same order in which they have been presented to us.

Appellants' first contention is that the evidence was insufficient to sustain the verdict of guilty (assignments of error 1, 2, 3, 4, 5, 6, 7, 8, 9, and 11). In 1929 the appellant Snyder had instituted an action in assumpsit against the school district of the city of Reading for breach of a contract for the erection of a school building. On January 21, 1931, Snyder obtained a verdict against the school district in the amount of $44,775.60. In this action Snyder was represented by John B. Stevens, Esq., a member of the Berks County Bar. On the same date that the verdict was obtained, an assignment to the appellant Burkey was entered of record. This assignment by Snyder to Burkey had been executed on January 14, 1931. The assignment had endorsed thereon: "John Stevens, Attorney for Plff." Stevens had no knowledge of the entry of the assignment, and had not endorsed his name thereon. In view of this action by the appellants, Snyder was requested to call at Stevens' office. Stevens spoke to Snyder about it and objected to it.

On January 28, 1931, the appellants, together with Charles G. Hendricks, called at Stevens' office in Reading. They brought along two papers, which were filed in the prothonotary's office that day. The one was a cancellation by Burkey of the previous assignment to him, and the other was an assignment of the verdict by Snyder to Charles G. Hendricks and Burkey, "as collateral security for money loaned to [Snyder] by said assignees, for judgments held against [him] by said assignees, and

for endorsements by said assignees, of notes in banks of which [he was] the maker; ......" These documents were prepared by A. Francis Gilbert, an attorney, of Middleburg, Snyder County, Pa. Both were witnessed by him and also by Mary L. Wochley, Snyder's secretary.

While these papers were being filed, on January 28, 1931, Hendricks, according to Stevens, remained in Stevens' office, and, in the course of their conversation, told Stevens that he should go right on with the case and that there would be no difficulty about his fees. Motions for new trial and judgment n. o. v. were argued in the case against the school district of the city of Reading, and both motions were refused. The court below reduced the verdict to $40,100.53, and, on appeal to the Supreme Court, judgment of the court below was affirmed on April 24, 1933. *(Snyder v. School District of City of Reading,* 311 Pa. 326, 166 A. 875.)

Charles G. Hendricks had died on January 20, 1932.

On May 26, 1933, the school district was prepared to pay the judgment. On this day Stevens, attorney for Snyder, called him by telephone at Selinsgrove. On the afternoon of May 26th, the attorney for the school district, George Eves, met Stevens in the prothonotary's office in Reading, with a check for the amount of the judgment. Stevens could not say whether Snyder was present or not. Eves testified that Snyder was there. At that time the alleged forged agreement was filed. Commonwealth alleged that this agreement has subscribed thereto the forged signature of Charles G. Hendricks. The agreement was dated January 28, 1931. It contained the name of A. F. Inch as witness to the signatures of Charles G. Hendricks and Charles R. Burkey. It also contained an acknowledgment by Hendricks and Burkey taken by C. B. Forgy, Justice of the Peace. This agreement provided for disposition of the pro-

ceeds of the verdict, in the case of Snyder against the school district, between Hendricks and Burkey, who were, since January 28, 1931, the assignees of record, as follows: "......Charles G. Hendricks shall receive Five Thousand ($5,000.00) Dollars of said verdict when paid. Charles R. Burkey to receive the balance of the verdict. Each to pay their pro rata share of costs and Attorney fees. Balance of Five Thousand ($5,000.00) Dollars, after Attorney fees and costs are paid that is received by Charles G. Hendricks he agrees to pay on said Twenty Four Thousand ($24,000.00) Dollar note in the First National Bank of Selinsgrove, Penna., on which he is endorser for John C. Snyder, and the Board of Education of the City of Reading, Pennsylvania, is hereby authorized to pay all of said monies due under this verdict to John B. Stevens, Attorney in this case, and it is agreed by both parties that John B. Stevens shall issue a check of Five Thousand ($5,000.00) Dollars less costs to Charles G. Hendricks and the balance of the verdict less costs to Charles R. Burkey."

The judgment was satisfied, and, on May 27, 1933, the firm of Stevens and Lee gave their check to Snyder, payable to the order of Charles G. Hendricks Estate, in the amount of $4,166.67, and a check to Burkey in the amount of $34,074.66. Letters of administration had been issued by the register of wills of Snyder County, on the estate of Charles G. Hendricks, to his widow, S. Alice Hendricks.

On the same day, after receiving the checks, Snyder and Burkey went to the Reading Trust Company and attempted to obtain cash on the check to Burkey. They were given a treasurer's check, but came back again on June 8, 1933, when this check was cashed after Burkey had made an affidavit to the effect that the money was not intended for hoarding, but that the cash was to be used "to pay bills contracted by John C. Snyder of Selinsgrove, Pennsylvania." On June 23,

1933, the check payable to the Charles G. Hendricks Estate was paid by the Trust Company, the same having been delivered by Snyder to Mrs. Hendricks on June 20, 1933. Mrs. Hendricks testified that Snyder had promised Mr. Hendricks, during his lifetime, that he would assign one-half of the verdict in his case against the school district to Hendricks. Mrs. Hendricks applied the proceeds of the check on account of Snyder's note of $24,000, upon which Hendricks was endorser. The Commonwealth introduced in evidence, in addition to the alleged forged agreement, three receipts, supposed to have been given by Hendricks to Snyder, dated February 11, 1930, March 21, 1930, and July 2, 1930. These receipts had been produced in court by Snyder in an equity suit in Snyder County, wherein his wife and Burkey were the plaintiffs, and Mrs. Hendricks, individually and as administratrix, was the defendant. They were offered in evidence and became part of the record in that case. During that action the receipts were ordered impounded by the trial court. On December 4, 1934, after the arrest of the appellants, the prothonotary of Snyder County, at the request of Snyder, and after the latter's attorney had made arrangements with the court of that county, delivered these three receipts to the clerk of the court of quarter sessions of Berks County at Reading. The receipt dated February 11, 1930, contained an admittedly genuine signature of Charles G. Hendricks; the Commonwealth alleged that the receipts dated March 21, 1930, and July 2, 1930, contained forged signatures of Hendricks, and that they were identical in every detail and particular with the signature of Hendricks attached to the agreement between Hendricks and Burkey, which was the basis of the prosecution. The Commonwealth charged that the signatures of Hendricks to the agreement and the two receipts were tracings made from the genuine signature of Hendricks

on the receipt dated February 11, 1930. Prior to the time that the three receipts were offered in evidence in the equity case in Snyder County, they had been in the possession of Snyder. He voluntarily presented them that they might be offered as exhibits in the equity case, and he consented to their removal to Berks County after his arrest. They were offered in evidence at the trial of the appellants, and no objection to their admission was pressed.

Several witnesses who were familiar with Hendricks' signature, and who had frequently seen him write his name, testified that in their opinion the signature of Hendricks to the agreement was not genuine. The Commonwealth also produced, as a witness, Albert D. Osborn, a handwriting expert, who testified that in his opinion the signature of Charles G. Hendricks to the questioned document was forged. He based his opinion on a comparison of the alleged forged signature with genuine signatures of Hendricks. He testified that the signature on the agreement had been traced over the genuine signature of Hendricks on the receipt of February 11, 1930; he also testified that the signatures on the receipts of March 21, 1930, and July 2, 1930, were likewise traced over the signature on the receipt of February 11th. The signature on the agreement coincided exactly with the signature on the receipt of February 11th. They were identical in length, in the height of their letters, in the width of their letters, in the distance between letters, in the distance between the name and the initial, and in their angles and alignment. The signatures on the receipts of March 21, 1930, and July 2, 1930, correspond in the same manner with the genuine signature on the receipt of February 11th. That the three signatures were identical with the genuine signature was demonstrated to the jury. Demonstrative evidence, apart from the opinion evidence, was sufficient to warrant the jury in concluding beyond a

reasonable doubt that the signature of Hendricks to the agreement was a forgery. By photographing the genuine signature and the questioned signature on the agreement and superimposing the separate films one on the other, it was demonstrated that the two were identical in every part.

The witness Osborn also pointed out that the paper on which the genuine signature was written (receipt February 11, 1930) contained a small spot of blue ink, which is over the letter *i* in the name of Hendricks; that this spot of ink had nothing to do with the signature itself, but had apparently been dropped on the paper by accident; that this ink spot made the letter *i* in the signature appear as though it were an *r*; that the person who had traced the alleged forged signature to the agreement had mistakenly, but very carefully, copied this same ink spot, which was of a color different from the signature itself. From various exhibits and photographs and photographic enlargements of the signatures (one genuine and three alleged forgeries), he pointed out to the jury why he was of the opinion that the three were exact tracings of the genuine signature. He also testified that the genuine signature showed shadings that gradually widened and then diminished, while the alleged forged signature to the agreement showed a continuous, heavy, slightly wavering line such as would naturally result from a tracing.

Appellants denied that they had forged the signature of Charles G. Hendricks or caused or procured the same to be done. They insist that the signature of Hendricks to the questioned document is genuine and in his own handwriting, and that the same is true of his signatures on the three receipts which had been offered in evidence.

Appellants testified that on January 28, 1931, they, together with Hendricks and Miss Wochley, Snyder's secretary, went to the office of A. Francis Gilbert, in

Middleburg; that Hendricks explained to Gilbert that they wanted a reassignment of the verdict from Burkey to Snyder, and an assignment of the same from Snyder to Hendricks and Burkey; that Gilbert wrote out these two papers on his typewriter; that, after the preparation of the reassignment and the new assignment, they told Gilbert that they wanted an agreement between Hendricks and Burkey relative to the division of the verdict, and some provision inserted for the payment of attorney fees to John B. Stevens; that Gilbert dictated the agreement to Miss Wochley, who had accompanied them to Gilbert's office; that Hendricks took the two papers which were prepared by Gilbert; that they returned to Selinsgrove; that Miss Wochley there wrote out the agreement dictated by Gilbert for the division of the verdict between Hendricks and Burkey; that the latter agreement was executed in Snyder's office in Selinsgrove; that A. F. Inch was present and witnessed the execution; that C. B. Forgy was called to take the acknowledgment of Hendricks and Burkey. Miss Wochley testified that she called Justice of the Peace Forgy on the telephone to come over and take the acknowledgment; Snyder testified that he called Forgy; and Burkey testified that he did. Burkey testified that Hendricks asked Inch to witness the agreement in Snyder's office; that it was Hendricks who asked Miss Wochley, Snyder's secretary, to go along to Gilbert's office at Middleburg; that the agreement in question was executed by Hendricks first, then by Burkey, the acknowledgment taken by the justice of the peace, and then witnessed by Inch at the request of Hendricks.

The defense produced evidence to the effect that after the execution of the three papers on January 28, 1931, Snyder, Burkey, and Hendricks went to Reading and arrived at the office of Attorney Stevens about 4 p. m.; that Stevens called the prothonotary's office that it might remain open until the assignments were re-

corded; that Hendricks, Burkey, and a man from Stevens' office took the two assignments to the court-house and had them filed; that Hendricks had the two papers which were filed, and also the agreement for the division of the verdict, which he left with Stevens.

On the other hand, Stevens testified that he did not recollect receiving the questioned document on January 28, 1931, when the reassignment and the new assignment were filed; that on this occasion Hendricks remained in his office and talked to him; that Hendricks told him at that time that he need have no concern about his fees; that he did not know when he received the questioned document; that he filed it on May 26, 1933, when the judgment was paid to him by the attorney for the school district; that he did not know whether Snyder was present on that afternoon of May 26th, although he had talked to him on the telephone that day relative to the payment of the judgment.

The defense called Inch, the subscribing witness to the questioned document. However, he was not asked to testify relative to witnessing the alleged signature of Hendricks on the agreement. He was interrogated relative to his signature as a witness on the receipt of March 21, 1930. Although he had previously testified in the equity case in Snyder County that he saw Hendricks sign this receipt, he testified in the present proceeding that he could not say that he saw Hendricks sign. C. B. Forgy, Justice of the Peace, who was supposed to have taken the acknowledgment of Hendricks and Burkey to the questioned document, was not called as a witness by either the Commonwealth or the defense.

Proof that Hendricks' signature to the questioned document was a forgery is conclusive. It is a recognized fact that an individual cannot write his name four times exactly alike, on widely separate occasions, so that one superimposed on the other will correspond

534

in every detail. See *Stitzel et al. v. Miller*, 250 Ill. 72, 34 L. R. A. (N. S.) 1004, 95 N. E. 53; *Day v. Cole*, 65 Mich. 129, 31 N. W. 823; In re *Rice's Will*, 81 App. Div. 223, 81 N. Y. S. 68; *Boyd et al. v. Gosser*, 78 Fla. 64, 82 So. 758. Snyder had in his possession a genuine signature on the receipt of February 11th. He also had in his possession the receipts of March 21, 1930, and July 2, 1930. The questioned document was prepared on the typewriter in Snyder's office by his secretary; Burkey admits that he signed it there; and Burkey and Snyder reaped the benefits of its provisions. Burkey, the brother-in-law of Snyder, and Hendricks were both creditors of Snyder and endorsers on his notes. Hendricks' endorsement was in the amount of $24,000.

The jury could conclude that the questioned document was delivered at Reading, by Snyder, on May 26, 1933. Attorney Eves testified that Snyder was in the prothonotary's office on the afternoon of May 26th when the judgment was paid to Stevens, attorney for Snyder. Stevens testified that he had called Snyder that day, at Selinsgrove, and thought he told him of the proposed settlement. Stevens could not say when he had received the questioned document, but it appears from his testimony that it was not given to him on the date alleged by Snyder and Burkey, January 28, 1931. Stevens also stated at one time that he received it from Snyder or Burkey. It was filed more than a year after Hendricks' death, although dated January 28, 1931, and it provided for a division of the verdict between Hendricks and Burkey on a basis entirely different from that which Snyder had promised Mr. and Mrs. Hendricks, and modified the assignment to Hendricks and Burkey bearing the same date. After Burkey received the check from Stevens on May 27, 1933, in the amount of $34,100.93, he endeavored to have it cashed; and, in company with Snyder, finally obtained the cash

on June 8th. Although Snyder received a check for Mrs. Hendricks from Stevens on May 27th, he did not deliver it to her until June 20th, which was 12 days after the time that Burkey and Snyder had received more than $34,000 in cash, Burkey's share of the verdict under the alleged agreement. A. Reed Hayes, attorney for the First National Bank of Selinsgrove, had inquired from Snyder, during the year 1933, relative to the payment of the money in the Reading school district case. Snyder replied that he preferred to send him a copy of the agreement, as writing was better than words, and that the agreement was on record. Hayes testified that there was no such agreement on record at the time. He received a copy of the agreement (not a carbon of the original) on June 14th, six days after Burkey had cashed his $34,000 check.

The evidence meets the requirements of the Act of Assembly under which the appellants were indicted; and there were sufficient facts and circumstances from which the jury was warranted in convicting the appellants. See *Commonwealth v. Leib,* 76 Pa. Superior Ct. 413; *Commonwealth v. Brown,* 96 Pa. Superior Ct. 13; *Commonwealth v. Powers,* 110 Pa. Superior Ct. 319, 168 A. 328; *Commonwealth v. Winegrad,* 119 Pa. Superior Ct. 78, 180 A. 160.

Appellants' third, fourth, sixth, and tenth assignments of error are to the effect that the certificate of the justice of the peace on the questioned document is prima facie evidence of the facts therein set forth, and that the same is conclusive because the Commonwealth failed to impeach the certificate by sufficient competent evidence. It is true that a line of authorities holds that a certificate of a notary public or justice of the peace is prima facie evidence of the facts therein set forth. See *Sherer v. The Easton Bank,* 33 Pa. 134; *Keichline v. Keichline,* 54 Pa. 75; *Cover and Wife v. Manaway,* 115 Pa. 338, 8 A. 393; *Zollner v. Moffitt,* 222

Pa. 644, 72 A. 285; *First National Bank of Hanover v. Delone*, 254 Pa. 409, 98 A. 1042; *Bittenbender Co. v. Bergen*, 277 Pa. 27, 120 A. 658. However, if the signature of Hendricks to the questioned document was a forgery, the acknowledgment was as false and fraudulent as the instrument itself. See *Steel et al. v. Snyder et ux.*, 295 Pa. 120, 128, 144 A. 912, 915. When the Commonwealth proved that the signature of Hendricks to the questioned document was a forgery, nothing more was required to overcome the prima facie evidence of its execution and acknowledgment. The Commonwealth was not obliged to question the signature of the justice of the peace or his legal authority to take an acknowledgment. The certificate of the justice of the peace, and all that it implied, could not overcome conclusive proof that the document itself was a forgery. See *Smith et al. v. Markland et al.*, 223 Pa. 605, 631, 72 A. 1047, 1056. We find no merit in these assignments.

The appellants also contend that it was the duty of the Commonwealth to call Inch, the subscribing witness, and Forgy, the justice of the peace, who certified that he took the acknowledgment of Burkey and Hendricks to the questioned document (assignments of error 4 and 25). We overrule these assignments. The burden was on the Commonwealth to prove the guilt of the appellants beyond a reasonable doubt. The Commonwealth was certainly not required to attempt to meet this burden by calling, as witnesses, Inch and Forgy who, according to the Commonwealth's theory, must have been parties to the fraud and forgery. The appellants relied upon the validity of the questioned document. The Commonwealth alleged that Hendricks never entered into such an agreement, and that his signature attached thereto was a forgery. Inch was called as a witness for the defense, but he was not asked to testify relative to signing the questioned document as witness to the signatures of Hendricks and Burkey.

The cases cited by appellants have no application, and we cannot agree with appellants' theory that the Commonwealth owed a duty to the appellants to call the subscribing witness and the justice of the peace, who were, most probably, either wilfully or negligently participants in the crime. The Commonwealth could not be expected to ask these witnesses to incriminate themselves by confessing that they were participants in the execution of a forged document. See *Steel et al. v. Snyder et ux.*, supra, 295 Pa. 120, 127, 144 A. 912, 914.

The court below committed no reversible error in admitting in evidence the receipts, dated March 21, 1930, and July 2, 1930, offered by the Commonwealth (assignments of error 12, 13, 14, and 15). Snyder presented these receipts in order that they might be offered in evidence on behalf of the plaintiffs, who were his wife and Burkey, in the equity case in Snyder County, wherein S. Alice Hendricks was the defendant. The receipts were court records, and were directed to be returned to the court of that county because they were turned over to Snyder by the court stenographer before the conclusion of that case. They were returned to the court stenographer of that county by Snyder's secretary, and, at the request of Snyder and pursuant to arrangements made by Snyder's attorney with the court, they were delivered to the clerk of the court of quarter sessions of Berks County in whose custody they remained until produced at the trial of this case. These exhibits were not taken from Snyder in violation of fundamental rights, and then used against him in the criminal prosecution. The exhibits were not obtained by search and seizure and used in violation of sections 8 and 9, article 1 of the Constitution of Pennsylvania. See *Commonwealth v. O'Malley*, 81 Pa. Superior Ct. 100. Appellants did not raise any objection to the admission in evidence of the receipt of February 11, 1930, containing the admittedly genuine

signature of Hendricks, although this receipt was included with the other two receipts, the admission of which the appellants assign as error. The three receipts were impounded by the court of Snyder County, at the same time and under the same circumstances, and were delivered together to the clerk of the court of quarter sessions of Berks County. We find on the record, relative to the admission of the two receipts, the following, by appellants' counsel: "I object, if the Court please, for the time being and first ask the privilege of cross-examining before I press that objection." After cross-examination by appellants' counsel the objection was not pressed. · We find no merit in the assignments of error in this connection.

We have carefully examined the record relative to appellants' sixteenth, seventeenth, eighteenth, and nineteenth assignments of error, which charge the trial judge with an abuse of discretion in the conduct of the trial to the prejudice of the appellants. The appellants contend that the trial judge improperly entered into the trial of the case by questioning the two appellants and two of their witnesses while on the witness stand, and thus violated the rules laid down by our Supreme Court in the case of *Commonwealth v. Myma,* 278 Pa. 505, 123 A. 486. Although the court's participation in examination of the witnesses may have been somewhat unnecessary, it properly sought to make their testimony on matters of importance more definite and specific. We are of the opinion that the appellants received a fair trial, and that the trial judge by his questions disclosed no bias and conveyed no impression of partiality. He kept within the bounds of his discretionary powers. In *Commonwealth of Pennsylvania v. McKeehan et al.,* 93 Pa. Superior Ct. 348, at page 353, in an opinion by Judge HENDERSON, this court said: "The inquiries of the court were all pertinent and not objected to by the defendant or his counsel. It was not judicial

conduct within the prohibition of *Com. v. Myma,* 278 Pa. 505 [123 A. 486], on which the appellant relied. The court there said: 'Judges should refrain from extended examination of witnesses; they should not, during the trial, indicate an opinion on the merits, a doubt as to the witnesses's credibility, or do anything to indicate a leaning to one side or the other, *without explaining to the jury that all these matters are for them.'* The case is not authority for the proposition that during the trial of a criminal case the court may not more fully develop the actions and motives of the witness than was done by the Commonwealth in the cross-examination. On the contrary, it is the undoubted right of the court to make such inquiries when deemed necessary for the better understanding of the case by the jury, if this be done within reasonable limits, and without withdrawing the case from the uncontrolled consideration of the jury. In the interest of the proper administration of justice, it may be the duty of the court to make clear the state of facts involved by appropriate questions." The interrogation of witnesses for the defense and for the Commonwealth by the trial judge shows no bias or feeling; and the fair and impartial charge of the court left the case for the "uncontrolled consideration of the jury." See *Commonwealth v. Safis et al.,* 122 Pa. Superior Ct. 333, 186 A. 177; *Davidson v. Mylish,* 320 Pa. 275, 182 A. 368.

Complaint is made by the appellants that the trial court committed reversible error in refusing to permit a witness called by the appellants to testify as a handwriting expert (assignment of error 20). The appellants called J. Newton Baker as a witness. He was examined as to his experience. The examination disclosed the varied activities of the witness. He went to an art school in Philadelphia, in 1894, for a period of two years, where he worked on pen and ink script. He then became a newspaper cartoonist; he subse-

quently worked for an engraving company, for several newspapers, for the U. S. Coast Goedetic Survey, for the U. S. Department of Agriculture, for the Interstate Commerce Commission, for the Bureau of Internal Revenue of the Treasury Department, and for the hydrographic office of the U. S. Navy. He was engaged in these various duties until two years previous to the time of his appearance in this case. While so engaged he studied law, and was admitted to the Bar of the District of Columbia in 1905, to the Bar of Union County, Pennsylvania, in 1908, and to the Supreme Court of Pennsylvania in 1926. He testified that he had also studied and read several works on handwriting, and that for two years he had held himself out as an examiner of questioned documents. He maintains a law office in his residence in Washington, D. C. His last employment was with the U. S. Navy Department, where he had worked for six years. During his spare time he also studied photography. He stated that he had testified in court as a handwriting expert on one occasion in the District of Columbia. He also found time to do some magazine writing on semilegal subjects. The trial court sustained the Commonwealth's objection to the witness' testifying as an expert on handwriting. It is largely within the discretion of the trial judge to determine whether a witness shall be permitted to testify as an expert, and whether the qualifications with respect to his knowledge have been sufficiently established. See *Ryder v. Jacobs*, 182 Pa. 624, 630, 38 A. 471, 472. The experiential qualifications of a witness are to be determined, in the first instance, by the trial judge, and he will not be reversed on appeal unless there has been a clear abuse of that discretion. The court below, in its opinion refusing appellants' motion for a new trial, stated: "In determining the competency of the alleged expert, the trial judge had the opportunity to observe the conduct of the witness

before him, and to note the many things which bear upon the reliability of the witness's pretensions to special knowledge which cannot appear upon the record. This and the fact that the witness from his own testimony had so many occupations caused a serious doubt as to his being a specialist or expert."

The qualifications of the witness were not so apparent that we can hold that the court below committed reversible error in excluding his testimony as a handwriting expert. In addition thereto, there is nothing on the record in the form of an offer as to what the appellants proposed to prove by the testimony of this witness, or for what specific purpose they sought to qualify him as an expert. Where the court below refuses to permit a witness to testify as an expert, the record should contain an offer as to what is to be proved by such witness in order that an appellate court may be enabled to determine whether the party making the offer of evidence has been injured by its rejection by the trial court. The appellants in this case could properly have made such an offer, either before or after the ruling of the trial judge. See *Commonwealth v. Grauman,* 52 Pa. Superior Ct. 204.

It is urged by appellants that no motive was shown for the perpetration of the forgery by the appellants (assignment of error 21). As we previously stated, the evidence was sufficient to support the verdict, and there was proof of all of the elements of the crimes for which the appellants were indicted and convicted. See *Commonwealth v. Powers,* 110 Pa. Superior Ct. 319, 326, 168 A. 328, 330; 16 C. J. 78. Evidence of matters which had no relationship to the offenses charged was properly excluded.

Appellants also complain that the court below abused its discretion in refusing a motion for a new trial: first, because the appellants discovered, since the trial, various papers with the signatures of Charles G. Hendricks,

where he had written and spelled his name "Hendircks"; and secondly, because A. F. Inch, a witness for the defense, made a statement after the trial in which he admitted that his testimony at the trial was untrue (assignments of error 22, 23, and 24).

There is no probability that the introduction of additional signatures of Hendricks would produce a different result on a retrial of the case. Commonwealth's witness Osborn testified that sometimes the $i$'s and $r$'s in Hendricks' signatures were not distinguishable; and a witness for the defense, Charles Arbogast, cashier of the Farmers' National Bank of Selinsgrove, testified that Hendricks sometimes spelled his name "Hendircks," the $i$ apparently being more prominent than the $r$. The appellants offered in evidence many exhibits containing Hendricks' signature. It does not appear that such after-discovered evidence would be anything other than cumulative, or that it would have any probable effect in bringing about a different verdict. We find no reason to differ with the action of the court below in refusing a new trial on these grounds. Inch was not questioned, as a witness for the defense, as to the execution of the questioned document by Hendricks, although his signature appeared as a witness thereon. His testimony related to the receipt of March 21, 1930, on which his name appears as a witness to the signature of Charles G. Hendricks. The witness testified on March 19, 1935, at the trial of the instant case, that he did not know whether the signature on the receipt was that of Hendricks, and that he could not remember whether or not he saw him sign. On March 28, 1935, he made an affidavit that when he testified at the trial he did not tell the truth, and that he also failed to testify truthfully before the alderman in connection with the prosecution of the appellants. The testimony of the witness in the equity case, in May, 1934, did not correspond with his testimony in the instant case.

His affidavit now repudiates the latter; but it contains the significant statement that he does not remember whether he saw Hendricks sign the questioned document. As said in the case of *Commonwealth v. Brady*, 76 Pa. Superior Ct. 488, at page 490: " . . . . . . this alleged change of testimony coming from such a source would not likely induce any other finding than that formerly given. The witness on whom the appellant relies stands discredited by his own testimony, and would be open to the same criticism as that given on the first trial," and there is no "assurance that he would not again change his mind."

No substantial reason has been presented by the appellants for reversing the court below and granting the appellants a new trial. It was for the jury to ascertain the guilt or innocence of the appellants on the evidence, guided by the instructions of the court on the law. The case was well and fairly tried, and the rights of the appellants were properly protected. We find no reversible error on the record. The convictions were warranted by the testimony.

All the assignments of error are overruled.

Judgments are affirmed, and the record is remitted to the court below in order that the sentences may be fully executed.

KELLER, P. J. would reverse and grant a new trial because of the refusal of the trial judge to permit J. Newton Baker to testify as a handwriting expert witness for the defendants; and because of his, the trial judge's, one-sided and unnecessarily extended examination of the defendants.