## Crampton v. Crampton et al.

*Samuel H. Jubelirer*, for petitioner.

*J. Calvin Lang* and *Martin Goodman*, for defendants.

FETTERHOOF, P. J., twentieth judicial district, specially presiding, April 7, 1942.—Daisy L. Crampton, petitioner, filed her petition under the Act of March 27, 1862, P. L. 192, 21 PS §703, alleging that two certain mortgages recorded in the office of the register of deeds and mortgages for Blair County, on real estate situate in Antis Township, in said county, one dated October 20, 1927, for $1,600 to John D. C. Crampton and recorded in mortgage book vol. 273, p. 273, and one dated August 3, 1928, for $3,800.50, recorded in mortgage book vol. 284, p. 315, and purporting to be signed by her and her husband, Benjamin P. Crampton, were not in fact signed and executed by her, but that both are forgeries as to her. To this petition for a decree to cancel said mortgages an answer was filed by Josephine L. Crampton, wife of John D. Crampton, setting forth she had received the mortgage of $1,600 by assignment from her husband, April 18, 1940, and both she and John D. Crampton denied that either or both mortgages are forged. On the contrary they allege said mortgages bear the genuine signatures of Benjamin P. Crampton and Daise Crampton, both of which signatures were properly witnessed and they duly acknowledged same before Frank K. Troutwine, a notary public. By stipulation duly filed the parties hereto waived a jury trial,

and upon the taking of testimony before us the matter is now for our determination.

## Findings of fact

1. That the mortgage dated October 4, 1927, for $1,600 and recorded in mortgage book vol. 273, p. 273, and offered in evidence as respondents' exhibit no. 1, is signed by petitioner, as one of the mortgagors, in her true and genuine handwriting, and is not a forged document.

2. That the mortgage dated August 3, 1928, for $3,800.50 and recorded in mortgage book vol. 284, p. 315, and offered in evidence as respondents' exhibit no. 2, is signed by petitioner, as one of the mortgagors, in her true and genuine handwriting, and is not a forged document.

## Discussion

In our discussion of this case we will refer to the parties as petitioner and respondents. We fully agree with the learned counsel in this case that, although this act was passed in 1862, there does not seem to be any case reported wherein an action was brought under said act. Therefore, in the proceedings and our interpretation of the act, we must be guided by what we deem reasonable and proper.

The mortgages in question showed on their face a duly-certified acknowledgment by the alleged mortgagors. This is to be deemed "prima facie evidence of such execution and acknowledgment, or proof, without requiring proof of the said seal, as fully to all intents and purposes, and with the same effect only, as if the same had been so acknowledged or proved before any judge, justice of the peace, or alderman within this commonwealth": Act of April 3, 1840, P. L. 233, 21 PS §46; Pusic v. Salak et al., 261 Pa. 512.

These acknowledgments were taken before a notary public and under the Acts of January 2, 1815, P. L. 3,

6 Sm. L. 238, 28 PS §221, and December 14, 1854, P. L. [1855] 724, §§1, 3, 21 PS §§381, 384, the certificate of the notary was prima facie evidence of the allegations set forth in it; that what the notary certifies to shall have been done by him: Bell, Secretary of Banking, v. Anderson et al., 143 Pa. Superior Ct. 56; Zollner v. Moffitt, 222 Pa. 644.

Respondents having offered in evidence the recorded mortgages, they made out a prima facie case as to its proper execution, subject, of course, to rebuttal by petitioner that same was forged: Steel et al. v. Snyder et ux., 295 Pa. 120.

Petitioner testified that the signature to the mortgages in question is not hers, and she never signed or executed same; that her correct name is *Daisy* Crampton and she never signed her name as *Daise* Crampton. On cross-examination petitioner was shown several checks, a letter, an envelope and papers on which the name Day and Daisy L. Crampton appeared, and the name spelled differently. She would not identify any of her handwriting and her answer as to whether or not it was her signature was usually, "No, I am not sure", "No", "It is not my name", "I don't know", "It looks like it". In 1929 an application was filed with the William F. Gable Company, Altoona, Pa., and to this application was attached a small photograph of petitioner, and the name Daisy L. Crampton written in ink. She would not say whether or not that was her signature. On direct examination she was shown a number of exhibits bearing her signature which were of recent date, even up to the time of the trial.

M. A. Nernberg, a handwriting expert, was called and testified that he compared the disputed signatures with genuine signatures of petitioner, that he saw her write her name and that in his opinion the signatures appearing on the mortgages are not those of petitioner. It is here noted that the standards used by the expert

are all of recent date, whereas the disputed signatures were made in 1927-28.

The respondents called Margaret Vander Moer, formerly Margaret Benson, who testified in detail as to witnessing the signing of the mortgage for $1,600 by Daise Crampton. She testified that she was stenographer for about three years for Frank K. Troutwine, Esq., of Tyrone, Pa., now deceased; that she prepared the mortgage, which petitioner signed in her presence in the office of Mr. Troutwine, and that she and he signed as witnesses, and petitioner duly acknowledged same, that she knew petitioner, who was a chiropodist in Tyrone, and remembers this transaction especially because petitioner is colored and Mr. Troutwine had very few colored folks as clients.

Mrs. Elizabeth Goheen Troutwine testified that the signature F. K. Troutwine appearing as a witness on the two mortgages in question is that of her deceased husband, the attorney who drew the same.

Samuel L. Barr, assistant cashier of the First Blair County Bank, Tyrone, Pa., testified that he has charge of the note window and every day passes upon the signatures of many persons; that petitioner did business at his bank and signed papers there; that he is familiar with her signature, and that she signed the mortgages in question. At the time of the taking of the testimony the record shows we sustained an objection to the witness being called as an expert. In this we were in error because with his wide experience in the banking field he was fully qualified, and we now so rule: Popalis v. Yanchura, 114 Pa. Superior Ct. 204.

Miss Lois Harpster, who has charge of the personnel department of the William F. Gable Company, was called to identify the signature to an employment application of petitioner appearing in respondents' exhibit no. 18. The admissibility of the card was questioned and petitioner, called as if on cross-examination, would not state it was her signature, although

admitting the card contained her picture. It seems improbable that anyone else would sign this card, and the testimony of petitioner as to the signature was very uncertain and evasive. She most certainly must have known whether or not she signed it. However, there not being proper proof of the signature to the card, it is not admissible.

Mr. Nernberg in testifying for the petitioner stated: "On the other hand, the two questioned exhibits are absolutely similar in every respect, so that those two questioned exhibits are also written by one and the same person."

In the case of Williamson v. Barrett et al., 147 Pa. Pa. Superior Ct. 460, Judge Baldrige speaking for the Superior Court stated (p. 465):

"The appellant argues that the testimony offered by the plaintiff was insufficient to successfully impeach the notary's official act. A notary public's certificate is prima facie evidence of the due execution of a written instrument, but it is not conclusive in a case of fraud or forgery. It does not prevent the showing that in truth the one alleged to have made the acknowledgment never appeared before the notary: *Smith v. Markland*, 223 Pa. 605, 629, 72 A. 1047. It may be rebutted, but clear and satisfactory proof is required: *Steel et al. v. Snyder et ux.*, 295 Pa. 120, 128, 144 A. 912. If such a high standard of evidence is submitted the court cannot say as a matter of law that the challenged instrument is valid: *Pusic v. Salak et al.*, 261 Pa. 512, 518, 519, 104 A. 751; *Commonwealth v. Snyder*, 123 Pa. Superior Ct. 523, 536, 187 A. 254."

Although we excluded the testimony of E. R. Cox, John I. Dewey, and A. H. McCamant for respondents as incompetent and inadmissible, we feel that petitioner has not met the burden placed upon her to show by clear and satisfactory proof that the signatures were forged. Her testimony all through was evasive and lacked that clarity and frankness necessary to impress one with its

sincerity and correctness. As stated in Porter's Estate, 341 Pa. 476, "The evidence of the expert witness [Nernberg] is persuasive", but his testimony is based upon a comparison of standards of recent date with the disputed signatures made 14 or 16 years ago and is not convincing.

Against the testimony of petitioner and the expert, we have the direct testimony of Margaret Vander Moer, who typed the one mortgage and witnessed the signature. Her testimony was most convincing and, taken with all the other evidence of respondents, leaves no other conclusion than that petitioner signed and acknowledged the $1,600 mortgage, and if so it necessarily follows, as the expert testified the $3,800.50 mortgage was signed by the same person, that petitioner also signed and acknowledged it.

In our careful consideration of this case, we are not overlooking the fact that there seems to be a similarity between the admitted signatures of petitioner and the disputed signatures. Then we have here two mortgages prepared by a highly reputable attorney, whose unquestioned signature is affixed as a witness, and the notary who took the acknowledgment. If these mortgages are forgeries, then it must follow that he knew or had something to do with it. This under no circumstances can we conceive under the evidence in this case.

### Conclusions of law

1. That the testimony introduced by petitioner was not of the clear and satisfactory proof or of the high standard of evidence required to challenge or overcome the presumption of prima facie validity of the mortgage dated October 4, 1927, and offered as respondents' exhibit no. 1.

2. That the testimony introduced by petitioner was not of the clear and satisfactory proof or of the high standard of evidence required to challenge or overcome

the presumption of prima facie validity of the mortgage dated August 3, 1928, and offered as respondents' exhibit no. 2.

### Decree

Now, April 7, 1942, petitioner not having made due proof that the signatures to the mortgages recited in the petition were forged, the petition is hereby dismissed and judgment is entered for respondents. Costs to be paid by petitioner.