racial characteristics of the Hazelwood district.

This memorandum opinion is adopted by the Court as its findings of fact and conclusions of law, and the clerk is directed to prepare and enter the proper order of judgment in favor of the defendants.

## JUDGMENT

In accordance with the Memorandum and Order of the Court this day filed which is incorporated in and made a part of this judgment;

It is hereby ordered and adjudged that judgment be and is hereby entered in favor of defendants and against plaintiff.

**UNITED STATES of America,**
**Plaintiff,**

v.

**Alan RIEMER, Defendant.**

**No. CR 2-75-9.**

United States District Court,
S. D. Ohio, E. D.

March 12, 1975.

Curtis Griffith, Jr., Asst. U. S. Atty., William W. Milligan, U. S. Atty., Columbus, Ohio, for plaintiff.

Dwight A. Teegardin, Columbus, Ohio, for defendant.

## OPINION AND ORDER

KINNEARY, Chief Judge.

This matter is before the Court on defendant's motion to suppress and the government's memorandum in opposition. A hearing on the motion was held on March 10, 1975.

Defendant is charged by indictment with possession with intent to distribute methaqualone in violation of Title 21, United States Code, Section 841(a)(1). Prior to December 13, 1974, members of the Drug Enforcement Administration Task Force [DEATF] received confidential tips and other information indicating that a package in transit from Florida to the Agler Manufacturing Company, 1540 Clara Avenue, Columbus, Ohio contained contraband. On December 13, 1974, agents located the package at Gateway Trucking and with the permission of Gateway took the package to DEATF offices. That same day Detective Charles Woodard of the DEATF prepared an affidavit for a search warrant and Judge Bruce Jenkins of the Franklin County Municipal Court issued a warrant authorizing a search of the package for marijuana.

That same afternoon officers executed the warrant, and the package was found to contain a tool box filled with approximately ten pounds of methaqualone, a Class II controlled substance. All but a small amount of the methaqaulone was removed, and the package was resealed and delivered to Agler Manufacturing on December 16, 1974. A few minutes later the defendant picked up the package and took it with him to his place of business, Columbus Custom Cycle, 1604 Clara Avenue, Columbus, Ohio. Shortly thereafter, members of the DEATF and other law enforcement officers entered defendant's place of business and placed him under arrest. Special Agent Harry Hensel then submitted an affidavit to United States Magistrate Mark R. Abel, who issued a search warrant for 1604 Clara Avenue. This warrant was executed that same afternoon and the agents discovered the small amount of methaqualone previously left in the package.

In his motion to suppress, defendant contends that the facts set forth in the affidavit in support of the search warrant issued on December 13, 1974, do not meet the constitutional standard for probable cause. It is therefore argued that the search was illegally conducted and that the evidence garnered therefrom must be suppressed. Defendant further argues that the statements in the affidavit supporting the December 16, 1974 search warrant are the product of an illegal search. Therefore, it is submitted, evidence obtained in the December 16 search must be suppressed as fruit of the poisonous tree. This Court must therefore decide whether or not the search warrant issued by Judge Jenkins was based upon probable cause.

The Fourth Amendment to the Constitution of the United States upholds the "right of the people to be secure in their persons, houses, papers and effects, against unreasonable searches and seizures" and provides that "no Warrants shall issue, but upon probable cause . . . ." In determining whether such probable cause exists, "affidavits for search warrants . . . must be tested and interpreted by magistrates and courts in a commonsense and realistic fashion." United States v. Ventresca, 380 U.S. 102, 108, 85 S.Ct. 741, 746, 13 L.Ed.2d 684 (1965); United States v. Harris, 403 U.S. 573, 577, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971). Such affidavits need not meet the technical requirements of elaborate specificity once required by common law pleading. Id. Nevertheless, the Constitution requires that the determination that probable cause exists must be made by "a neutral and detached magistrate." Johnson v. United States, 333 U.S. 10, 13–14, 68 S.Ct. 367, 369, 92 L.Ed. 436 (1948); Aguilar v. Texas, 378 U.S. 108, 111, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964); Coolidge v. New Hampshire, 403 U.S. 443, 449, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); United States v. United States District Court, 407 U.S. 297, 316, 92 S. Ct. 2125, 32 L.Ed.2d 752 (1972). Accordingly, the affidavit must set forth facts which enable the judicial officer to determine *for himself* whether or not there is probable cause to justify the issuance of a search warrant.

■■ Probable cause exists if "the facts and circumstances within [the affiant's] knowledge and of which [he has] reasonably trustworthy information [are, as presented to the magistrate] sufficient . . . to warrant a man of reasonable caution in the belief that" a crime is being committed or that fruits or evidence of a crime will be discovered. Carroll v. United States, 267 U.S. 132, 162, 45 S.Ct. 280, 69 L.Ed. 543 (1925); Brinegar v. United States, 338 U.S. 160, 175, 69 S.Ct. 1302, 93 L.Ed. 1879 (1949); Draper v. United States, 358 U.S. 307, 313, 79 S.Ct. 329, 3 L.Ed. 2d 327 (1959). As the phrase implies, probable cause is a set of probabilities grounded in the factual and practical considerations which govern the decisions of reasonable and prudent men. Brinegar v. United States, *supra,* 338 U.S. at 175, 69 S.Ct. 1302; Draper v. United States, *supra,* 358 U.S. at 313, 79 S.Ct. 329. It is more than bare suspicion, but less evidence than required for conviction. Brinegar v. United States, *supra.*

The affidavit submitted in support of the December 13 search warrant reads as follows:

On 12/6/74 information from a confidential informant stated the following: a tool box being sent to Agler Mfg. Co. from Fla. as a Christmas present was in [sic] route to Cols, O. and the informant believed it to contain more than a tool box. The package located in route was found to weigh appx. 25 lbs. or appx. 18 lbs. more than the manufactured weight. Upon inspection of the parcel, one end indicates that the staples holding the box closed have been tampered with and that two staples are missing. The parcel sender, John Thomas, 6295 Sunset Dr., Miami, Fla. appears to be false as DEATF agents cannot locate this person and further the address is an unoccupied dwelling. Further persons known to be involved in marihuana trafficking have made inquiries concerning this parcel. Further, a known drug distributor under investigation by the DEATF is absent from Columbus with a large quantity of money reportedly to purchase a quantity of contraband.

The facts set forth in this affidavit are:

1. A confidential informant stated that a tool box was being sent from Florida to Agler Mfg. Co. in Columbus.

2. The informant believed it to contain more than a tool box.

3. The package was located and found to weigh approximately 18 lbs. more than the manufactured weight of the tool box.

4. One end of the parcel had been tampered with.

5. The parcel sender appears to be false since DEATF agents cannot locate this person and the address is an unoccupied dwelling.

6. Persons known to be involved in marihuana trafficking have made inquiries concerning this parcel.

7. A known drug distributor under investigation by the DEATF is absent from Columbus with a large quantity of money reportedly to purchase a quantity of contraband.

The question before this Court is whether or not these facts created probable cause for issuance of the search warrant.

■ Much of the affidavit relates information supplied by a confidential informant. Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964), established a two pronged test for determining the sufficiency of an affidavit which is based upon information obtained from a confidential source. The Court "must be informed of some of the underlying circumstances" from which the informant drew his conclusions. Furthermore, the affidavit must relate "some of the underlying circumstances from which the officer concluded that the informant . . . was 'cred-

ible' or his information 'reliable.' " 378 U.S. at 114, 84 S.Ct. at 1514.

■ The present affidavit contains no information about the underlying circumstances from which the informant drew his conclusions. We are not told whether he was an eyewitness to the facts he relates, or whether he based his report on secondhand information or even mere rumor. Nor is there any information concerning the informant's credibility or the reliability of his information. There is thus no basis upon which "a neutral and detached magistrate" can assess the trustworthiness of the information supplied. Insofar as it is based upon information obtained from a confidential source, therefore, this affidavit fails to meet the requirements of *Aguilar*.

Moreover, the informant's tip has almost no probative value. As related in the affidavit, the tip indicates that a tool box is being sent from Florida to a Columbus address and that the informant believes it to contain more than a tool box. The affidavit does not indicate what the informant believes to be in the box. There is no allegation that this information is related to drug traffic or to the commission of any other crime. The tool box might in fact contain tools. Or perhaps the sender has included another innocent item in the box rather than sending two packages.

However, the affiant does provide information in addition to the informant's tip. The Court must therefore decide if this information standing alone is sufficient to establish probable cause.

Disregarding the informant's tip, the affidavit indicates that the package in question was located and found to weigh approximately eighteen pounds more than the manufactured weight of the tool box. Moreover, the parcel had been opened and resealed and the return address appeared to be false. This information tends to corroborate the informant's belief that the package contains something more than a tool box. To this point, however, there is absolutely no indication that the package contains contraband. These facts are consistent with several innocent explanations. They also support the *suspicion* that drugs may be found inside, but a search warrant may not issue on mere suspicion. Nathanson v. United States, 290 U.S. 41, 47, 54 S.Ct. 11, 78 L.Ed. 159 (1938).

■ The affidavit also indicates that a known drug distributor is absent from Columbus with a large quantity of money reportedly to purchase a quantity of contraband. However, there is absolutely no allegation tying this information to the package in question. There is no indication that the drug distributor is anywhere near Florida and no indication that he is sending back drugs in a package. Nor is there any information tying the addressee of this package with drug violations. This information must therefore be disregarded.

The one bit of information in the entire affidavit that would tend to tie this package with drug violations is the alleged fact that "persons known to be involved in marihuana trafficking have made inquiries concerning this parcel." In Spinelli v. United States, 393 U.S. 410, 418, 89 S.Ct. 584, 590, 21 L.Ed.2d 637 (1969), the Supreme Court found inadequate a reference to a "known" gambler. The Court stated that "just as a simple assertion of police suspicion is not itself a sufficient basis for a magistrate's finding of probable cause, we do not believe it may be used to give additional weight to allegations that would otherwise be insufficient." 393 U.S. at 418–419, 89 S.Ct. at 590. Although three members of the Court questioned this principle in United States v. Harris, 403 U.S. 573, 582–583, 91 S.Ct. 2075, 29 L.Ed.2d 723 (1971), it has not been overruled. In a recent case involving a search for narcotics, the Sixth Circuit held that the "mere fact that two persons known to have been engaged in trafficking in narcotics were observed on the same premises cannot justify a search of the premises without some-

thing more." United States v. Hatcher, 473 F.2d 321, 323 (6th Cir. 1973).

■ Thus, the portion of the affidavit which relates the informant's tip does not meet the requirements of *Aguilar,* and the remainder of the affidavit standing alone does not establish probable cause. Furthermore, the combination of these two elements of the affidavit also fails to establish probable cause. As stated in *Spinelli,* the "informer's report must first be measured against *Aguilar's* standards so that its probative value can be assessed. If the tip is found inadequate under *Aguilar,* the other allegations which corroborate the information contained in the hearsay report should then be considered. At this stage as well, however, the standards enunciated in *Aguilar* must inform the magistrate's decision. He must ask: Can it fairly be said that the tip, even when certain parts of it have been corroborated by independent sources, is as trustworthy as a tip which would pass *Aguilar's* tests without independent corroboration?" 393 U.S. at 415, 89 S.Ct. at 588. The Court holds that the affidavit taken as a whole does not meet this standard and that there was not probable cause for issuance of the search warrant. Accordingly, the evidence garnered from the December 13 search must be suppressed.

■ The government argues that the Fourth Amendment only prohibits "unreasonable" searches and that the definition of what is "reasonable" varies with the circumstances. Furthermore, the government contends that a person has a lesser privacy interest in a package in transit than he does in his home. Accordingly, it is submitted that a lower standard of probable cause would justify the issuance of a search warrant for this package.

The Courts have used the concept of "reasonableness" in an inconsistent manner. In general, however, the concept of reasonableness properly governs the limited number of warrantless searches allowed by the Constitution. As stated in Terry v. Ohio, 392 U.S. 1, 20, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968), "[i]f this case involved police conduct subject to the Warrant Clause of the Fourth Amendment, we would have to ascertain whether 'probable cause' existed to justify the search and seizure which took place. . . . Instead, the conduct involved in this case must be tested by the Fourth Amendment's general proscription against unreasonable searches and seizures." 392 U.S. at 20, 88 S.Ct. at 1879. In the present case there are none of the exigent circumstances that would justify a warrantless search and the search is thus governed by the Warrant Clause of the Fourth Amendment.

It is true that in a limited number of circumstances the courts have allowed the issuance of warrants based upon a reduced showing of probable cause. In Camara v. Municipal Court, 387 U.S. 523, 87 S.Ct. 1727, 18 L.Ed.2d 930 (1967), for example, the court recognized a lower standard of probable cause for the issuance of warrants to support administrative searches to enforce health and safety standards. That situation was carefully distinguished from a search pursuant to a criminal investigation. 387 U.S. at 535, 87 S.Ct. 1727.

In his concurring opinion in Almeida-Sanchez v. United States, 413 U.S. 266, 275, 93 S.Ct. 2535, 37 L.Ed.2d 596 (1973), Justice Powell speaks of a "functional equivalent of probable cause" that he would allow to justify the issuance of warrants to search automobiles near the border in order to discover illegal aliens. 413 U.S. at 277, 93 S.Ct. 2535. Although this "functional equivalent" would be less than the traditional standard of probable cause, Justice Powell was careful to differentiate this type of search from searches in criminal prosecutions. 413 U.S. at 278, 93 S.Ct. 2535. Although the type of warrantless "stop and frisk" upheld in Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968) was not based upon probable cause, such a search can-

not extend to the seizure of evidence which does not present a threat of injury to the officer. Sibron v. New York, 392 U.S. 40, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968). Neither these cases nor the fact that the evidence was seized from a package in transit justify any lowering of the standard of probable cause in this situation. *Cf.* United States v. Beckley, 335 F.2d 86 (6th Cir. 1964), cert. denied, 380 U.S. 922, 85 S.Ct. 921, 13 L.Ed.2d 807 (1965); Webster v. United States, 92 F.2d 462 (6th Cir. 1937).

Having held that the evidence from the December 13 search must be suppressed, the Court must now consider the legality of the second search. The affidavit presented to Magistrate Abel reads as follows:

On 12/13/74 a search warrant was served on a package addressed to Agler Manufacturing, 1540 Clara, Columbus, Ohio. A quantity of tan powder, tested by Columbus P D laboratory as methaqualone, was found in this package. This package, less all but about 3 oz. of methaqualone, was repackaged & delivered to Agler Mfg. by Det. Nash. This was delivered by Det. Nash on 12/16/74. At approximately 12:10 p. m., 12/16/74, Mr. Riemer was observed to pick up the above package at Agler Mfg. and enter 1604 Clara, Columbus, Ohio.

 Defendant concedes that this affidavit stated probable cause for issuance of the second warrant. The information presented, however, is based entirely upon the results of the December 13 search. Therefore, the evidence garnered by the December 16 search is "fruit of the poisonous tree" and it, too, must be suppressed. Silverthorne Lumber Co. v. United States, 251 U.S. 385, 40 S.Ct. 182, 64 L.Ed. 319 (1920); Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963).

Whereupon, the Court determines that defendant's motion to suppress is meritorious, and it is therefore granted.

It is so ordered.