James MUNDEN, aka Jim Munden,
Appellant (Defendant),

v.

The STATE of Wyoming,
Appellee (Plaintiff).

No. 84–156.

Supreme Court of Wyoming.

April 22, 1985.

Leonard D. Munker, Public Defender; Martin J. McClain, Appellate Counsel; and Denise Nau, Asst. Appellate Counsel, Wyoming Public Defender Program, for appellant.

A.G. McClintock, Atty. Gen.; Gerald A. Stack, Deputy Atty. Gen.; John W. Renneisen, Sr. Asst. Atty. Gen.; and Sylvia Lee Hackl, Asst. Atty. Gen., for appellee.

Before THOMAS, C.J., and ROSE, ROONEY, BROWN and CARDINE, JJ.

ROONEY, Justice.

Appellant was tried before a jury and found guilty of two counts of indecent liberties with a minor, in violation of § 14–3–105, W.S.1977, and found not guilty of first-degree sexual assault, § 6–4–302(a)(i), W.S.1977. He was sentenced to six to ten years on one count and eight to ten years on the other, with these sentences to run consecutively. From this conviction and sentence Mr. Munden appeals, stating the issues as follows:

1. Whether appellant was denied effective assistance of counsel;

2. Whether it was plain error to not let the jury retire for the evening;

3. Whether the prejudicial effect of the introduction of nude photographs, together with other items in the suitcase, outweighed the probative value of such evidence;

4. Whether the trial court abused its discretion in the imposition of appellant's sentence; and

5. Whether the district court erred in failing to credit appellant's sentence with time served in presentence detention.

We affirm.

I

Appellant bases his contention of ineffective assistance of counsel on the failure of his court-appointed public defender to do the following: give an opening statement, develop a theory of the case, object to juror fatigue, and move for a new trial.

▇▇▇ We have held that a criminal defendant is entitled to "effective" assistance of counsel. *Spilman v. State*, Wyo., 633 P.2d 183 (1981); *Hoskovek v. State*, Wyo., 629 P.2d 1366 (1981). The standard by which we determine whether the assistance is effective is one of reasonableness: If the assistance rendered by counsel is that which would reasonably be rendered by a reasonably competent attorney under the circumstances of the case, then it is effective; if it is not, it is ineffective. *Spilman v. State*, supra; *Hoskovek v. State*, supra. We apply a presumption that counsel is effective, and thus place the burden on appellant to establish the ineffectiveness of his counsel. *Spilman v. State*, supra.

This scheme for determining effective assistance of counsel has recently been approved by the United States Supreme Court. In *Strickland v. Washington*, — U.S. —, 104 S.Ct. 2052, 2064, 80 L.Ed.2d 674, *reh. denied* — U.S. —, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), that Court said:

> " * * * The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result."

The Court went on to say that considerable deference must be given to counsel's performance, with every effort being made to eliminate the distorting effects of hind-

sight. "[C]ounsel is strongly presumed to have rendered adequate assistance." Id. 104 S.Ct. at 2066.

Going even beyond the presumption of reasonableness, the Court held that error by counsel will not warrant setting aside the judgment of a criminal proceeding if such error had no effect on the judgment. " * * * The defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. * * * " Id. 104 S.Ct. at 2068. The Court also went on to place the burden on the defendant to show a reasonable likelihood that the decision reached would have been different without the errors.

▇▇▇ Appellant has not met his burden of proving either that his attorney was ineffective or that the alleged deficiencies in his attorney's performance prejudiced his defense. Appellant finds fault with the failure of his counsel to present an opening statement, and asks this court to accept the proposition that such failure violates "prevailing professional norms." We agree that an opening statement may be a very useful device. However, we cannot agree that it must be given in every instance. One reason a defense attorney might choose not to give an opening statement is because to do so would commit the defense to a certain course which might prove disastrous as the case develops. In fact, it does not appear that opening statements are nearly as important as appellant would have us believe, as in Connecticut the trial court decides in its discretion whether a defendant may give an opening statement at all. *United States v. Salovitz*, 701 F.2d 17 (2nd Cir.1983). That court also said:

> "It is common knowledge that defense counsel quite often waive openings as a simple matter of trial strategy. *Tahl v. O'Connor*, 336 F.Supp. 576, 582 (S.D.Cal. 1971), *aff'd*, 460 F.2d 1068 (9th Cir.) (per curiam), *cert. denied*, 409 U.S. 1042, 93 S.Ct. 536, 34 L.Ed.2d 493 (1972); *People v. Travis*, 10 Ill.App.3d 714, 717–18, 295 N.E.2d 325, 327–28 (1973), *cert. denied*, 415 U.S. 928, 94 S.Ct. 1438, 39 L.Ed.2d

486 (1974). Such a waiver has been held to be 'trivial', United States ex rel. *Crispin v. Mancusi*, 448 F.2d 233, 237 (2d Cir.), *cert. denied*, 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 288 (1971); *United States v. Robinson*, 502 F.2d 894, 896 (7th Cir.1974), a 'tactical decision', *United States v. Decoster*, 624 F.2d 196, 213–14 (D.C.1979) (en banc), a 'matter of professional judgment', *Williams v. Beto*, 354 F.2d 698, 703 (5th Cir.1965), 'particularly within the realm of trial strategy', *Commonwealth v. Tarver*, 253 Pa.Super. 185, 190, 384 A.2d 1292, 1295 (1978), and ordinarily will not form the basis for a claim of ineffective assistance of counsel, Finer, Ineffective Assistance of Counsel, 58 Cornell L.Rev. 1077, 1093–94 (1973). * * * " *Id.* 701 F.2d at 20–21.

In the case at bar, the victims' mother testified that they had known appellant for several years, and that the children had visited appellant at his residence for several days prior to Christmas of 1982. Susan, who was twelve years old at the time of trial and ten years old at the time of the incident, testified that while at appellant's home, with her seven-year-old brother (eight years old at the time of trial), appellant gave her beer to drink, then took her into the bedroom and took his clothes, and then her clothes, off. She said that he then forced her to pose on the bed while he took pictures of her, and that he then brought her brother into the room, removed his clothes, posed him on the bed with Susan, and took more pictures. She also said that her brother left the bedroom, and appellant tied her to the bed, fondled her, and forced his penis into her mouth. Five Polaroid pictures were introduced into evidence. Four of these pictures were of Susan, naked and posed on a bed, and one was of Susan and her brother posed naked on the bed. The pictures had been found in a suitcase by the side of a country road. The suitcase also contained several other items which appellant admitted were his.

■ Appellant's defense at trial was that he had not taken these particular five photographs, even though other photographs that he admitted were his were in the suitcase. Appellant also testified that he did not know how his belongings had gotten into the suitcase, which he disclaimed, and he did not know how the suitcase came to be by the side of the road. The decision by appellant's counsel to not emphasize these inconsistencies in an opening statement can easily be viewed as a legitimate trial strategy.

■ Appellant complains that his counsel was ineffective by not formulating a theory of the case and presenting it to the jury. This also does not rise to the level of ineffective assistance of counsel. If there is no defense to present, counsel cannot be condemned for not presenting more than he or she has. Appellant testified that he did not take the objectionable pictures and that he did not know how his belongings came to be found in the suitcase with the pictures. His counsel, in closing argument, repeated these things, reviewed the evidence, and reminded the jury that the State carried the burden of proving the offenses charged beyond a reasonable doubt. Counsel also told the jury that the case boiled down to whom the jury believed, Mr. Munden or the victims. What else could he do?

■ Appellant's brief indicates that his trial counsel should have identified the setting of the photographs, should have explained why the suitcase and its contents were left by the side of the road, and should have come up with an explanation for all the questions left unanswered by the case. We do not agree. First, if in fact the defendant was telling the truth at trial, and he was innocent, how could he possibly know how those lewd photographs ended up on the road in a suitcase with many of his belongings? And, thus, how could his counsel explain these questions to the jury? Secondly, if the defendant was lying at trial, as the jury found, then his counsel could not just fabricate a completely untrue scenario to explain the facts presented at trial. It certainly is not the duty of defense counsel to make up a defense where none exists. Counsel denied

his client's guilt, and the jury found otherwise. ·"[T]he Constitution * * * commands a battle, but not a victory." *Odom v. United States*, 377 F.2d 853, 859, 22 A.L.R.3d 705 (5th Cir.1967).

Appellant contends lastly that his counsel was ineffective for failing to object to juror fatigue, and failing to file a motion for a new trial on the basis that juror fatigue had affected the deliberation. This contention rests on the fact that the jury began its deliberation at 4:20 p.m. after a full day of trial, and continued until past midnight. At 11:00 p.m., the jury sent a note to the judge. The note stated:

"We have reached a unanimous verdict on one count, but remain unable to reach a unanimous verdict on the other two counts.

"Does the court wish us to continue deliberation?"

The court responded, "Yes! Please continue."

■ Inasmuch as this court does not find error in the trial court's actions with regard to the length of the jury's deliberation, as more fully explained infra, we cannot hold that it was ineffective assistance for appellant's counsel to fail to object to juror fatigue. We also cannot then say that appellant's counsel was ineffective for failing to move for a new trial on this basis. We hold that appellant received effective assistance of counsel in every respect.

## II

■ It was not plain error not to let the jury retire for the evening. Plain errors or defects affecting substantial rights may be noticed even though not brought to the attention of the court. Rule 49(b), W.R.Cr.P.; Rule 7.05, W.R.A.P. As the question of juror fatigue was not brought to the attention of the trial court, appellant must meet the requirements of the plain error rule in order to seek review in this court. *Scheikofsky v. State*, Wyo., 636 P.2d 1107 (1981). We apply the plain error rule cautiously and only in exceptional circumstances. *Scheikofsky v. State*, supra.

■ This court has developed a three-part test to determine when an error qualifies as plain error. First, the record must clearly show the incident which is alleged as error. Second, the party invoking the plain error rule must show that a clear and unequivocal rule of law was violated. Finally, that party must show that a substantial right was denied him or her and that he or she has thereby been materially prejudiced. *Bradley v. State*, Wyo., 635 P.2d 1161 (1981).

In an attempt to meet the first requirement, appellant points out that this court cited with approval the 1968 Approved Draft of the American Bar Association of Standards Relating to Trial by Jury. *Hoskins v. State*, Wyo., 552 P.2d 342, 346, reh. denied 553 P.2d 1390 (1976), *cert. denied* 430 U.S. 956, 97 S.Ct. 1602, 51 L.Ed.2d 806 (1977). Specifically, appellant draws our attention to § 5.4(b) which reads in part, "The court shall not require or threaten to require the jury to deliberate for an unreasonable length of time or for unreasonable intervals." Appellant then asks this court to assume that because the jury deliberated nearly eight hours after a full day of trial, it must have been fatigued. We will not make this assumption. We find nothing in the record that indicates that the jury was fatigued. In fact, it seems evident, from the note that was sent from the jury to the judge, that the jury was quite aware of how to communicate with the judge. Had the jury been fatigued, it easily could have sent another note to the judge stating that it needed to break for the evening. It did not do so.

■ Appellant also has not shown that a clear and unequivocal rule of law has been violated. The general rule is that "the length of time a jury may be kept together for deliberation is a matter for the sound discretion of the trial judge." *United States ex rel. Latimore v. Sielaff*, 561 F.2d 691, 696 (7th Cir.1977), *cert. denied* 434 U.S. 1076, 98 S.Ct. 1266, 55 L.Ed.2d 782 (1978); *Mills v. Tinsley*, 314 F.2d 311, 313 (10th Cir.1963), *cert. denied* 374 U.S. 847, 83 S.Ct. 1907, 10 L.Ed.2d 1067 (1963); *Mar-*

*tinez v. State*, Okl.Cr., 569 P.2d 497, 502 (1977). However, the jury cannot be forced to agree upon a verdict. *United States ex rel. Latimore v. Sielaff*, supra.

Appellant has failed to show that the trial court abused its discretion in allowing the jury to deliberate until around midnight.

### III

Appellant next argues that the prejudicial effect of the introduction of the five photographs outweighed the probative effect of that evidence.

Rule 403 of the Wyoming Rules of Evidence provides:

"Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

Appellant claims that he was never adequately connected to the suitcase or its contents and there was no evidence to show that appellant was the only person who could have left the suitcase where it was found. As we have said before, a trial court's discretionary ruling on evidence will not be overturned except for a clear abuse. *Towner v. State*, Wyo., 685 P.2d 45, 49 (1984); *Buhrle v. State*, Wyo., 627 P.2d 1374 (1981). We will not overturn a trial court's determination without a showing that there existed no legitimate basis for that determination. *Hopkinson v. State*, Wyo., 632 P.2d 79, 139 (1981), *cert. denied* 455 U.S. 922, 102 S.Ct. 1280, 71 L.Ed.2d 463 (1982). Reversal is required only if the photographs had little or no probative value and were extremely inflammatory or introduced merely to inflame the jury. *Hopkinson v. State*, supra; *Key v. State*, Wyo., 616 P.2d 774, 776 (1980). In this case, the photographs were probative in that they corroborated the victim's testimony that she had been undressed and posed on a bed, and pictures were taken of her and her brother. They were also linked to appellant in several ways. The victim testi-

fied that appellant posed her and her brother and he took the pictures. The pictures were found in a suitcase which also contained numerous items appellant admitted were his, such as bank account materials and a letter from the IRS, all bearing the name James Munden, a bottle of prescription pills that were given to appellant by his ex-wife, and several other pictures of a nonobjectionable nature.

■ With this evidence in mind, and acknowledging that the five photographs were not pleasant, we find that the trial court correctly admitted the photographs into evidence, as their prejudicial effect was outweighed by their probative value.

### IV

Appellant's next two issues, abuse of discretion in sentencing and credit for presentence detention, can be dealt with together. Appellant was sentenced to consecutive sentences of six to ten years and eight to ten years. He argues that this is an abuse of discretion in light of the fact that he has no history of similar offenses and no record of trouble with the law from 1957 to the time of the present conviction. The indecent liberties statute provides for a penitentiary sentence of "not more than ten (10) years." Section 14–3–105, W.S. 1977.

■ This court will not reverse a sentence which is within the statutory limits absent a clear abuse of discretion. *Ventling v. State*, Wyo., 676 P.2d 573 (1984). The trial court set out fully the reasons for the sentence given. After making note of the fact that appellant still professed his innocence despite being found guilty by a jury of twelve, that the victims were not only young but also of limited mentality, and that the mother of the victims was also "functioning subnormal," the trial court stated:

"The sentence that I'm going to impose, Mr. Munden, is simply for incapacitation and isolation. My concern is the protection of society, protection of children from any further abuse at your hands.

It does not appear to me that you—that rehabilitation, which, of course, is the Court's primary concern, is a very practical possibility in this case. You deny having committed any offense; the state hospital cannot help someone who—who denies having done anything wrong. They indicate that you were not treatable, so there is nothing, really, that we can do to help you and to ensure on the outside that this is not going to happen again.

"So, it seems to me that the only thing that I can do is put you in a place where I can protect the other children in the world from the same thing happening to them.

"I've considered probation, but I've rejected it for the reasons that I just stated."

We do not find an abuse of discretion here.

As to the credit for presentence detention, we have recently set out the applicable test. In *Hedge v. State*, Wyo., 696 P.2d 51 (1985), we stated that it is within the trial court's discretion to grant or deny credit for time served in presentence detention if (1) the detention is not due to the defendant's indigency, and (2) the sum of the time spent in presentence detention plus the sentence given upon conviction does not exceed the maximum allowable sentence. See *Jones v. State*, Wyo., 602 P.2d 378 (1979).

The State acknowledges that appellant was indigent and his presentence confinement was due to his indigency, and then wisely concedes that appellant must be given credit against his maximum sentences for his presentence detention. The record reflects appellant was arrested on January 17, 1984, and his judgment and sentence was filed on June 7, 1984. Accordingly, he should receive credit of 142 days against his maximum sentence.

With regard to such credit being given against appellant's minimum terms, we again decline to accept the proposition espoused by the public defender's office and hold that, "[t]here is no fundamental right to credit for presentence custody beyond that which will result in more jail time than that authorized by law." *Hedge v. State*, supra, 696 P.2d at 53.

Affirmed with the mandate allowing credit of 142 days against appellant's maximum sentence.