Al HAMBURG, Appellant (Defendant),

v.

STATE of Wyoming, Appellee (Plaintiff).

No. 90–188.

Supreme Court of Wyoming.

Nov. 8, 1991.

Rehearing Denied Dec. 4, 1991.

Robert Moxley of Gage & Moxley, Cheyenne, Gary Sinawski and Harry Kresky of The International People's Law Institution, New York City, for appellant.

Joseph B. Meyer, Atty. Gen., Sylvia L. Hackl, Deputy Atty. Gen., and Mary B. Guthrie, Sr. Asst. Atty. Gen., for appellee.

Before THOMAS, CARDINE, MACY and GOLDEN, JJ., and BROWN, Ret. J.

BROWN, Justice, Retired.

Appellant Al Hamburg appeals from a forgery conviction. The issues stated by appellant are:

## I

Did the proof at trial demonstrate that defendant committed the crime of forgery?

## II

Was the defendant tried before a jury which was impartial and free of bias and prejudice?

## III

Was defendant deprived of effective assistance of counsel?

## IV

Did the trial court commit other prejudicial and reversible error?

## V

Do the terms of defendant's sentence violate his rights under the First Amendment of the U.S. Constitution and the laws of the State of Wyoming?

We affirm in part, reverse in part and remand for modification of the judgment.

Appellant Al Hamburg is one of Wyoming's most conspicuous citizens. He ran for sheriff of Goshen County, Governor, United States Senator and nine times for United States Representative.[1]

---

1. Appellant was also a party in a landmark contract case, *Hamburg v. Hansen,* 683 P.2d 662 (Wyo.1984). Hamburg has not yet equaled the record of John J. Spriggs who ran eleven times

Appellant is a member of the New Alliance Party. When Congressman Dick Cheney resigned his position in the United States House of Representatives, a special election to select his successor was set for April 26, 1989. To gain his party's nomination for the seat, appellant was required to collect at least 479 signatures on nomination petitions. He circulated nomination petitions and turned them in to the Secretary of State for verification. As stated in his brief, appellant was "paying persons 20 cents per signature collected on his behalf." During the verification process, it appeared that some of the signatures were unusual and of a suspicious nature.

The petitions with questionable signatures were turned over to the Division of Criminal Investigation (DCI) for further investigation. Part of the DCI investigation included contacting persons whose signatures appeared on the petitions. There was evidence that some of the names on the petition were obtained from the cemetery.[2] Also, there were several instances of apparent forged signatures of living persons. At trial, fifty-seven people testified that they had not placed their signatures on the petitions.

Appellant's connection to some of the forged signatures was established by the testimony of Richard Crivello, senior forensic examiner for the Wyoming State Crime Laboratory, a handwriting expert. Mr. Crivello compared the appellant's handwriting samples with handwriting exemplars prepared by appellant and persons whose names appeared on the petitions. He concluded that some of the signatures on the petitions had been forged. He gave his opinion that appellant had probably written at least twenty-one of the names on the petition. Appellant was convicted by a jury on March 1, 1990, of two counts of forgery and given a suspended sentence. He appeals the conviction and sentence.

I

Appellant contends that signing names of others on a nomination petition is not forgery as contemplated by W.S. 6–3–602 (June 1988 Repl.) which states in part:

(a) A person is guilty of forgery if, with intent to defraud, he:

(i) Alters any writing of another without authority;

(ii) Makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed; or

(iii) Utters any writing which he knows to be forged in a manner specified in paragraphs (i) or (ii) of this subsection.

■ "Writing" is defined by W.S. 6–3–601 (June 1988 Repl.) as "printing or any other method of recording information, money, coins, tokens, stamps, seals, credit cards, badges, trademarks, and other symbols of value, right, privilege or identification." This statute does not purport to list documents or instruments subject to the forgery statute. Indeed, such enumeration would not be practical. A wide variety of documents or writings have been held to be subjects of forgery. 37 C.J.S. *Forgery* § 36, pp. 55–56 (1943). The words "printing or any other method of recording information * * * and other symbols of value, right, privilege or identification" contained in the statute are certainly broad enough to cover nomination petitions.

■ The substance of the instrument, as distinguished from its form or name, is determinative of whether it may support a

for Justice of the Wyoming Supreme Court. Neither Spriggs nor Hamburg ever ran as an incumbent.

2. The state, in Count I of the information, explained this Chicago voting phenomenon differently: "[E]ach of them being then deceased." At oral argument in *Schutkowski v. Carey*, 725

P.2d 1057 (Wyo.1986), counsel for appellees accounted for one of the original actors in unambiguous language, "He was deceased and remained deceased through the entire trial." Former Wyoming State Senator Win Hickey said she wanted to be buried in Chicago so that she could remain active in politics.

charge of forgery.[3] In determining what circumstances support a charge of forgery, the focus is on the elements of the crime rather than the name or species of instrument or document involved. In *Commonwealth v. Powers*, 110 Pa.Super. 319, 168 A. 328 (1933), the court held that a petition to strike off names from voters' registry lists could be the subject of forgery.

■ Appellant contends that the nomination petitions could not be the subject of forgery because they: were not listed in W.S. 6–3–601; had no intrinsic value; were incapable of accomplishing any fraudulent purpose; had no independent legal efficacy; did not establish any legal liability; and were not capable of accomplishing the purpose for which they were intended. Forgery is generally defined as the false making or materially altering, with intent to defraud, any writing, which if genuine, might apparently be of legal efficacy, or foundation of legal liability. *See, e.g., Carr v. United States*, 278 F.2d 702, 703 (6th Cir.1960); *State v. Kendrick*, 173 N.W.2d 560, 561 (Iowa 1970); *State v. Reese*, 283 Md. 86, 388 A.2d 122, 125–26 (1978); *State v. Thrunk*, 157 N.J.Super. 265, 384 A.2d 906, 909 (1978); *State v. McAllister*, 287 N.C. 178, 214 S.E.2d 75, 83 (1975). While the forgery statutes in the various jurisdictions may be slightly different, the gist of the offense of forgery is the false making of an instrument or uttering of such instrument with intent to defraud. *People v. Parrott*, 174 Cal.App.2d 301, 344 P.2d 643, 645 (1959).

Forgery is accomplished if the instrument is such that, if it were genuine, it would serve as the foundation for legal liability and has the potential to injure or defraud. In this case, the petitions had the potential for having legal effect and purported to be the act of another who did not authorize the act. The electors of the state would be defrauded and the election system of the state had the potential to be compromised by appellant's actions. Appellant cannot be absolved because his scheme was unmasked before his name was actually placed on the ballot.

## II

In the second issue, appellant argues that he was not tried before an impartial jury, free of bias and prejudice. In support of this argument he contends that the voir dire was not adequate. Rule 701, Uniform Rules for the District Courts, permits the examination of potential jurors for the purpose of selecting a panel who will fairly and impartially hear the evidence and render a just verdict. Voir dire is designed to raise alleged bias from the realm of speculation to the realm of fact and to explore possible grounds for challenges for cause. *Lopez v. State*, 544 P.2d 855, 861 (Wyo. 1976). For a more in-depth discussion of voir dire standards, *see Amin v. State*, 811 P.2d 255, 258–59 (Wyo.1991).

■ On voir dire, appellant's counsel asked the jury panel if anyone had feelings about the New Alliance Party. Venireman David Burrill stated "it has crossed my mind a time or two." Appellant's attorney followed this response by asking the entire panel whether they were opposed to the New Alliance Party's desire to participate in the election and "[w]ould it be a factor in your decision in this case?" There were no responses from the prospective jurors. Counsel then asked "whether it will affect you in the determination of guilt or innocence in this case, if that political factor would? Does anybody feel that it would?" Again, no jurors responded to these queries. A failure to directly and plainly examine jurors with respect to a particular basis for bias or prejudice constitutes a waiver of a later claim of prejudice. *Lopez*, 544 P.2d at 861. If appellant had concerns about whether any of the prospective jurors were prejudiced, he could have challenged them for cause, as permitted under W.S. 7–11–104 (June 1987 Repl.).

---

**3.** The problem most often arising on the character of the instrument relates not so much to the matter of generic classification but to the more specific inquiry whether the instrument imports or embodies some one or more of the elements of the crime, especially falsity and, on the assumption of genuineness, efficacy to affect the rights of others.

There is nothing in the record to demonstrate that appellant did not receive a fair trial by a fair and impartial jury, and he cites no authority to support this assignment of error. *See Amin,* 811 P.2d at 258–59. Furthermore, he makes no cogent argument and has not met his burden of demonstrating bias or prejudice of any panel member.

### III

In the third issue, appellant contends that at trial he was denied effective assistance of counsel. In more than a few cases of recent date, we have addressed the standard of evaluating claims of ineffective assistance of counsel:

> We do not evaluate those actions from a perspective of hindsight. We invoke a strong presumption that counsel rendered adequate and reasonable assistance making all decisions within the bounds of reasonable professional judgment.
>
> * * * Each case must be viewed in the total context of the representation afforded to determine if the defendant was denied his right to a fair trial.

*Gist v. State,* 737 P.2d 336, 342 (Wyo.1987) (citations omitted). *See also Amin,* 811 P.2d at 261; *Murray v. State,* 776 P.2d 206 (Wyo.1989); *Cutbirth v. State,* 751 P.2d 1257 (Wyo.1988); *Frias v. State,* 722 P.2d 135, 145 (Wyo.1986).

A reviewing court, using a "standard of reasonableness," must presume that counsel is competent and place the burden on the appellant to establish ineffectiveness of counsel's assistance. *Spilman v. State,* 633 P.2d 183, 184 (Wyo. 1981). An error by counsel will not warrant setting aside a judgment unless there is a reasonable likelihood that the decision reached would have been different without the errors. *Munden v. State,* 698 P.2d 621 (Wyo.1985). In *Munden,* we adopted the test set forth in *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984). Under *Strickland,* defense counsel's assistance will be deemed effective unless "counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." 466 U.S. at 686, 104 S.Ct. at 2063–64.

In *Campbell v. State,* 728 P.2d 628, 629 (Wyo.1986), this court stated:

> When reviewing the question of whether the assistance of counsel was effective, we use the standard of reasonableness. *Frias v. State,* Wyo., 722 P.2d 135 (1986); and *Munden v. State,* Wyo., 698 P.2d 621 (1985). To determine reasonableness, we look at trial counsel's acts or omissions in light of all the circumstances to determine if such acts or omissions fall outside the wide ambit of professionally competent assistance. *Frias v. State,* supra.

The burden rests upon an appellant to show the ineffective assistance of counsel. In *Strickland v. Washington,* 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, *reh. denied* 467 U.S. 1267, 104 S.Ct. 3562, 82 L.Ed.2d 864 (1984), the United States Supreme Court stated that in order for a convicted defendant to show that counsel's assistance was so defective as to require reversal, he must show two things:

> " * * * First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable." 466 U.S. at 687, 104 S.Ct. at 2064, 80 L.Ed.2d at 693.

The primary thrust of the ineffective counsel issue argued by appellant is that defense counsel did not discover, and

produce at trial, witnesses to rebut the state's witnesses and evidence, particularly the state's expert witness on handwriting. Appellant also contends that cross-examination of sixty-three state witnesses was deficient and ineffective.

Appellant complains that trial defense counsel should have produced witnesses or some evidence to support his argument that signatures on the petitions were collected by someone other than him. Additionally, appellant states that defense counsel should have found an expert witness to rebut the state's handwriting expert who testified that some of the signatures on the petitions had been forged and that appellant had probably written at least twenty-one of the names on the petition.

The fatal flaw in appellant's argument is, as we see it, he does not direct our attention to any witness who would supply evidence designed to rebut that said by the state's witnesses. The thrust of this argument is that somewhere out there is a witness who would testify favorably for appellant. For all we know, the three lawyers who represented appellant at trial made a diligent search but were unable to find witnesses who would rebut the state's witnesses. We cannot assume that somewhere such witnesses were available. *Murry v. State*, 713 P.2d 202, 212 (Wyo. 1986).

The charge that a defendant was denied effective counsel because his attorney did not call witnesses has often been raised. The decision not to call witnesses is a strategic choice. *Amin*, 811 P.2d at 261–62; *Laing v. State*, 746 P.2d 1247, 1250 (Wyo.1987). In order to successfully show ineffective assistance of counsel, the appellant must present the facts about which the proposed witnesses would have testified. *Campbell*, 728 P.2d at 628. The decision whether to call witnesses is normally within the judgment of counsel and will rarely be second-guessed through appellate hindsight. *State v. Onishi*, 64 Haw. 62, 636 P.2d 742, 744 (1981). The failure to call an expert witness is not prejudicial to a defendant if the expert's testimony would have been of questionable benefit. *People v. Dillard*, 680 P.2d 243, 245 (Colo.App.1984). Here, appellant has not dropped a hint about what an expert would have testified, generally inferring only that there is probably an expert somewhere who would testify about virtually anything.

In appellant's argument that cross-examination was ineffective, he does suggest a question and a follow-up question that defense counsel should have asked the five dozen state witnesses. He does not know, or at least does not tell us, what the answers may have been. Lawyers often state that "you should not ask a question on cross-examination unless you know the answer." To do so may result in an answer that tends to strengthen the opposition's case, and is often suicidal rather than homicidal! For all we know, if counsel had asked the question suggested by appellant, he may have dug a deeper hole for his client. Cross-examination technique is an aspect of trial strategy which is best left to the trial attorney rather than to the supervision of appellate courts.

In summary, appellant has not met his burden of showing ineffectiveness. In addition to not carrying his burden of showing that his attorney did not act reasonably, appellant has made no effort to show that he was prejudiced, aside from the fact that he was convicted. We have often observed that the finding of ineffective assistance of counsel is not mandated by the fact that the trial resulted in a conviction or that there are things which could have been done differently; instead, there must be a showing that such acts or omissions were so serious that the defendant was deprived of a fair trial. *Campbell*, 728 P.2d at 628.

## IV

In appellant's fourth issue, he states, "Did the trial court commit other prejudicial and reversible error?" In the first issue, he stated, "Did the proof at trial demonstrate that defendant committed the crime of forgery?" This assignment of error, together with the fourth issue, is broad enough to encompass a sufficiency

of the evidence issue. However, in his brief, this issue is not fully developed by appellant.

Our independent examination of the record and trial transcript reveals that there is a problem regarding proofs with respect to Count I of the information. This count alleges that dead persons' names appeared on the nominating petitions. The state's expert witness on handwriting was Richard L. Crivello. By way of foundation, he explained his method of examining documents to determine whether or not a forgery had been committed. Mr. Crivello testified that one method he used was comparing handwriting exemplars. He said, "A handwriting exemplar is an example of the known writing of a particular individual." In his examination of writings, Mr. Crivello had several groups of exemplars. He had the known signature and other writings of Mr. Hamburg. He had the known signature of Mr. Hamburg when, by request, he wrote the names of some of the people who purported to have signed the nominating petitions. Mr. Crivello also had the exemplars of some of the people whose names appeared on the nominating petition, who testified that they did not sign the petition.

The expert testified that the names of Sandra Dockins and Suzanne Pratt were definitely written by Mr. Hamburg. He testified that several other signatures on the petitions were *"very probably* prepared by Mr. Hamburg." (Emphasis added.) There was another list of names appearing on the petitions that Mr. Crivello said were *"probably* prepared by Mr. Hamburg." (Emphasis added.) The names Sandra Dockins and Suzanne Pratt were two of 289 persons referred to in Count II of the information and, according to the precise words of the information, were persons "being then alive."

We are satisfied that there was sufficient evidence for the jury to determine beyond a reasonable doubt that Mr. Hamburg signed the names Sandra Dockins and Suzanne Pratt on the nominating petitions. The sufficiency of the evidence test is met in this case if one or more of the alleged

forgeries in Count II of the information is proved. We hold that the state met its burden of proof with respect to at least the forged signatures of Sandra Dockins and Suzanne Pratt. The expert was not as certain regarding other names that he testified about.

Mr. Crivello expressed an opinion with respect to two signatures that were within the group included in Count I of the information (deceased persons). He stated that Roland J. Brown's signature and Frank E. Lewis' signature were probably prepared by Mr. Hamburg. "Probably" is not a term normally employed in a criminal case. According to Mr. Crivello's brief explanation, "probably" is considerably less certain than "definite." There was some equivocation in Mr. Crivello's opinion with respect to the Brown and Lewis signatures.

"[P]robability" [is defined] as "the state of being probable; the character of an event as more likely to happen or have happened than not to happen or have happened. * * * The ground of expectation that is recognized when the greater weight of evidence favors or is taken to favor an event or supposition." [The word] "probable" connotes "being so supported by evidence as to incline the mind to belief rather than disbelief, yet leaving room for doubt."

*In re Salomon's Estate,* 159 Misc. 379, 287 N.Y.S. 814, 820 (1936).

Probably means supported by evidence which inclines the mind to believe, but leaves some room for doubt. In *Barrett v. Green River & Rock Springs Live Stock Co.,* 28 Wyo. 379, 384, 205 P. 742, 744 (1922), we said, "The word 'probable' is defined by Webster as: 'Having more evidence for than against; supported by evidence which inclines the mind to believe, but leaves some room for doubt; likely.'"

Probably, probability and probable are terms ordinarily used in civil actions. In criminal preliminary hearings, "probable cause" is a familiar term.

Probable cause. Reasonable cause; having more evidence for than against. A reasonable ground for belief in the existence of facts warranting the proceedings

complained of. An apparent state of facts found to exist upon reasonable inquiry (that is, such inquiry as the given case renders convenient and proper), which would induce a reasonably intelligent and prudent man to believe, in a criminal case, that the accused person had committed the crime charged[.]

*Black's Law Dictionary* 1081 (5th ed. 1979).

■ Evidence demonstrating probable cause is more than a mere suspicion, but substantially less than beyond a reasonable doubt, the quantum of evidence required for a conviction. *United States v. Ventresca*, 380 U.S. 102, 107, 85 S.Ct. 741, 745, 13 L.Ed.2d 684, 688 (1965); *United States v. Riemer*, 392 F.Supp. 1291, 1294 (S.D.Ohio 1975); *People v. Gibbs*, 255 Cal.App.2d 739, 63 Cal.Rptr. 471, 475 (1967); *State in the Interest of A.R.*, 216 N.J.Super. 280, 523 A.2d 678, 680 (1987); *State v. Kasabucki*, 52 N.J. 110, 244 A.2d 101, 104 (1968); *People v. Holder*, 69 Misc.2d 863, 331 N.Y.S.2d 557, 564 (1972); *State v. Crockett*, 34 Or. App. 1019, 580 P.2d 214, 216 (1978); *State v. Feehely*, 27 Or.App. 343, 556 P.2d 142, 144 (1976).

Expert testimony that Mr. Hamburg probably signed the names of Roland J. Brown and Frank E. Lewis, while sufficient for a magistrate to bind over for trial, is an insufficient quantum of evidence required for conviction of forgery. There was no competent testimony or expert opinion regarding other names covered by Count I (deceased persons) of the information. Apparently the jury improperly elevated the proof that appellant "probably" forged signatures to proof beyond a reasonable doubt.

Because we reverse Mr. Hamburg's conviction on Count I of the information, we need not address other matters argued by appellant in his fourth issue on appeal.

## V

Appellant contends in the fifth issue that the terms of his probation were not reasonable. After conviction on two counts of forgery, the trial judge imposed sentence as follows:

IT IS THEREFORE ORDERED, ADJUDGED AND DECREED by the Court that Albert Hamburg, the above named Defendant, be, and he is hereby sentenced to serve not less than three (3) years and not more than five (5) years in the Wyoming State Penitentiary for Count I, and that Albert Hamburg, the above named Defendant, be, and he is hereby sentenced to serve not less than three (3) years and not more than five (5) years in the Wyoming State Penitentiary for Count II; that said sentences shall be served consecutively; that Albert Hamburg, the above named Defendant, be, and he is hereby fined in the sum of One Thousand Five Hundred Dollars ($1500.00) for Count I, and that Albert Hamburg, the above named Defendant, be, and he is hereby fined in the sum of One Thousand Five Hundred Dollars ($1500.00) for Count II, for a total of Three Thousand Dollars ($3000.00) in fines; and that Albert Hamburg, the above named Defendant, be, and he is hereby ordered and required to pay for the benefit of the Victims' Compensation Fund in Wyoming the sum of One Thousand Dollars ($1000.00) for Count I, and that Albert Hamburg, the above named Defendant, be, and he is hereby ordered and required to pay for the benefit of the Victims' Compensation Fund in Wyoming the sum of One Thousand Dollars ($1000.00) for Count II, for a total of Two Thousand Dollars ($2000.00) in victims' compensation.

IT IS FURTHER ORDERED, ADJUDGED AND DECREED by the Court that service of the confinement portion of the above imposed sentence be, and the same is hereby suspended; and that said Defendant is hereby placed on probation under the supervision of the Wyoming Department of Probation and Parole for a total period of six (6) years, being three (3) years per count, under the following terms and conditions:

\* \* \* \* \* \*

5. That the said Defendant shall fully pay, by cash, certified check or money order, to the Clerk of this Court, the total sum of Five Thousand Dollars

($5,000.00) for the fines and Victims' Compensation imposed; that regular, periodic payments for such shall be made according to a schedule or schedules determined by said Defendant's assigned Probation Officer; and that not less than the sum of One Hundred Dollars ($100.00) of the Victims' Compensation shall be paid before the expiration of ten (10) days next following entry hereof, and that the balance of the Victims' Compensation shall be paid before the expiration of one (1) year next following entry hereof.

6. That the said Defendant shall within one (1) year from the entry hereof satisfactorily complete a total of two hundred (200) hours of community service, the nature of which service shall be determined by said Defendant's assigned Probation Officer, provided that the one (1) year period for such service may be enlarged upon the recommendation of said Defendant's assigned Probation Officer made to and approved by the Court.

The court imposed certain standard terms and a few special conditions to the probation. Appellant objects to some of the special conditions imposed as follows:

1. A fine of $1,500 on each count.
2. A surcharge payment to the crime victims' compensation account of $1,000 on each count to be paid within one year.
3. Two hundred hours of community service to be completed within one year of the sentence.
4. A psychological evaluation at the Southeast Wyoming Mental Health Association to be done at defendant's expense, with the possibility of additional terms and conditions of the probation resulting therefrom.
5. No direct or indirect contact with appellant's former wife.
6. Not run for elective office during the probationary period.

W.S. 7–13–302(a)(ii) (June 1987 Repl.) permits a trial judge to place a convicted person on probation and impose an appropriate fine. The imposition of probation lies in the sound discretion of the trial court; therefore, probation decisions should not be disturbed, absent an abuse of discretion. *Buck v. State*, 603 P.2d 878 (Wyo.1979). For one convicted of a felony, the sentencing court is required to assess a surcharge to the crime victims' compensation account of not less than $50. W.S. 1–40–119(a)(i) (Supp.1991).

Because we reverse the conviction on Count I, the $1,500 fine and $1,000 payment to the crime victims' compensation account imposed on that count must also be vacated. There remains on Count II, the $1,500 fine and $1,000 surcharge payment to the crime victims' compensation account or a total of $2,500 in monetary penalties.

By the court's order, appellant is not required to pay the fine or payment to the crime victims' compensation account immediately. The trial court established a flexible schedule for payment which is to be determined by appellant's probation officer and appellant. This arrangement is sanctioned with respect to fines by W.S. 7–13–306 (June 1987 Repl.), which provides that fines may be paid in installments.

■ With respect to the surcharge payment to the crime victims' compensation account, in *Seaton v. State*, 811 P.2d 276, 282 (Wyo.1991), we determined that the portion of that sentence extending the time for payment of the surcharge beyond the ten-day period after entry of judgment was "an unlawful imposition and statutorily unauthorized surplusage." Consistent with *Seaton*, $900 of the surcharge must be vacated.

The remaining $1,600 in monetary penalties ($1,500 in fines, $100 surcharge), as adjusted, do not seem burdensome or unreasonable. By allowing appellant to devise a payment plan, the trial court considered his ability to pay. Appellant did not object to the payment of the fine in installments. The payment of the fine and surcharge was not a condition precedent to appellant's receiving probation. The problem in *Bearden v. Georgia*, 461 U.S. 660, 103 S.Ct. 2064, 76 L.Ed.2d 221 (1983), cited by appellant, is not a concern in this case. *Bearden* was a probation revocation case. In that case, the Supreme Court determined that the sentencing court could not properly revoke defendant's probation for

failure to pay a fine and make restitution, absent evidence and findings that he was somehow responsible for the failure. Hence, the trial court in *Bearden* erred in automatically revoking petitioner's probation and turning the fine into a prison sentence without making such a determination.

■ Appellant contends that he is indigent and cannot pay the monetary penalties. He states that the public defender was appointed to represent him at trial because of his impecunious circumstance. We are not persuaded that he cannot pay the modest monetary penalties within the time allowed.

Out of an abundance of caution, trial courts usually appoint the public defender to represent an accused if he requests such representation, even if his plea of indigency is suspect. Furthermore, it is not unusual for an accused to request that the public defender be appointed to represent him because of the extensive experience of the public defender in criminal matters.

Appellant is premature in his circuitous contention that the monetary penalties are tantamount to imprisonment for failure to pay a fine. If appellant does not pay the fine or his contribution to the crime victims' compensation account, he will have the opportunity to show the trial court that he made a good faith effort but was unable to discharge this obligation. In a possible future revocation hearing, it is unlikely that the trial judge would order incarceration of appellant if he could demonstrate that he made a bona fide effort to pay but was genuinely, financially unable to do so.

What we have said with respect to the fine and surcharge payment to the crime victims' compensation account is equally applicable to the probation requirement that appellant give 200 hours to community service. This is a discretionary matter with the trial court and there is no indication that this would be burdensome. In any case, if appellant is not running for state, county or city office, he will have more time to devote to community service.

■ One of the conditions of appellant's probation was that he submit to a psychological examination. This requirement was based on a recommendation of the probation officer because of past emotional and mental problems of appellant. The trial court used its broad discretionary powers accorded it in making decisions about probation conditions. Such a condition of probation is not unusual. It has been held that requiring a defendant to submit to a psychological stress test was valid because it was reasonably related to his rehabilitation. *Owens v. Kelley*, 681 F.2d 1362, 1369 (11th Cir.1982). A sentencing judge is permitted to consider various aspects of the defendant's personal life in deciding what kind of character the defendant possesses. *See Christy v. State*, 731 P.2d 1204 (Wyo. 1987). The appellant here has a long history of what some would characterize as aberrant behavior. The trial court considered many aspects of the appellant's character and behavior in determining appropriate rehabilitation measures. The trial court did not abuse its discretion in requiring a psychological examination.

■ We agree with appellant that the restriction on contact with his former wife is unrelated to the criminal conduct for which he was convicted and is not reasonably related to future criminal conduct. This condition of probation should be deleted.[4]

■ The prohibition against running for public office imposed on appellant may be unnecessary. Article 6, § 6 of the Wyoming Constitution and W.S. 6–10–106 (June 1988 Repl.) provide that a person who has been convicted of a felony cannot hold any civil or military office. Thus, appellant is already barred from holding state office without the conditions of his probation. However, we might invite problems with appellant if we were to vacate the court's prohibition against running for state public office. The constitution and statute referred to provide that a convicted felon is prohibited from holding public office.

---

**4.** Appellant must not interpret our determination here to be a license to bother his former wife.

They do not say such person is prohibited from running for office. We do not desire to construe Art. 6, § 6 of the Wyoming Constitution or W.S. 6–10–106 in this case. Therefore, we will not disturb the district court's prohibition against appellant running for state public office.

There is no disqualification for holding federal office on the basis of a felony conviction. Wyoming laws or Wyoming courts cannot properly impose conditions that disqualify a person from running for a federal office. The condition in the probation order, insofar as it applies to running for federal office, is inoperative.[5]

In summary, the conviction for forgery on Count I is reversed and the monetary penalties on that count are vacated. Count II is affirmed and the judgment and order is modified by deleting all but $100 of the surcharge, and the condition that appellant not contact his former wife. The prohibition against running for public office in the probation order does not apply to federal office. The other conditions of probation are affirmed.

Affirmed in part, reversed in part and remanded for an entry of judgment consistent with this opinion.

---

**5.** Appellant is disqualified from running for city council in Wyoming but is free to run for President or Vice President of the United States, as well as for Congress. U.S. Const. art. II, § 1.